**U.S. Bankruptcy Court**

**Eastern District of Pennsylvania**

Notice of Electronic Claims Filing

The following transaction was received from NICHOLAS, BRIAN on 3/24/2023 at 5:13 PM EST

[File another claim](#)

| | |
|---|---|
| **Case Name:** | Crystal G. Brown |
| **Case Number:** | [23-10104-mdc](#) |
| **Creditor Name:** | U.S. Bank, N.A., successor trustee at. el<br>c/o Select Portfolio Servicing, Inc.<br>P.O. Box 65250<br>Salt Lake City UT 84165-0250 |
| **Claim Number:** | 2    [Claims Register](#) |

**Amount Claimed:** $244,016.21
**Amount Secured:** $244016.21
**Amount Priority:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**POC Draft- Brown.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=3/24/2023] [FileNumber=31214529-0] [9a5a6dacf53928c4bc2b1c07c1375799e0c061abd1688e0f48fe73b5cde945b468 5d639150610bb617c6cc6f26685ff6fe15c8d65377160da00fbf9bbb888d54]]
**Document description:**Exhibit 410a Payment History
**Original filename:**C:\fakepath\410a Brown.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=3/24/2023] [FileNumber=31214529-1] [56a3455bec4920ceb94611d1253d1fcd16a9cef18c48d5a742b1d521b6a2096a11 f51a4a3c744bf92e8740301ce399025f2feebab6f53b4d5a7c8e9110f8b1a6]]
**Document description:**Exhibit Right to Foreclose Addendum
**Original filename:**C:\fakepath\RTF Language- Brown.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=3/24/2023] [FileNumber=31214529-2] [8d1221a8b9a7edcf9c8791951eb5ada2bdf7be41d70df8e93d8f28012421fc4cef d2657ac614410c766992ff7d5d2d0c3c3f0a10f2488737d77476729ff60d61]]

**Document description:**Exhibit Escrow Analysis
**Original filename:**C:\fakepath\Escrow Analysis- Brown.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=3/24/2023] [FileNumber=31214529-3] [4ffa712f76adf3556737ccdc81a98e2c33c79dca05893cb38ce4b9ce9759149f18 a03825a669284b1bb4175808951e31e7fe6ee36ff1a0dac220dac637b0c9d8]]
**Document description:**Exhibit Loan Documents
**Original filename:**C:\fakepath\Loan Documents_Redacted.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=3/24/2023] [FileNumber=31214529-4] [9503102387f386ecf20fc0e7a23918b0de30b101c3b10c68c63aab90d8b2a33e47 3998ebee2b824a96ec208fe67a7e59849114fd5ebd1d6f62e65c6f8b2e1848]]

**23-10104-mdc Notice will be electronically mailed to:**

JOSEPH F. CLAFFY on behalf of Debtor Crystal G. Brown
claffylaw@outlook.com, claffylaw@aol.com;claffylawecf@gmail.com

MICHAEL PATRICK FARRINGTON on behalf of Creditor U.S. Bank, N.A., successor trustee to LaSalle Bank National Association, on behalf of the holders of Bear Stearns Asset Backed Securities I Trust 2006-HE10, Asset-Backed Certificates Series 2006-HE10
mfarrington@kmllawgroup.com

United States Trustee
USTPRegion03.PH.ECF@usdoj.gov

KENNETH E. WEST
ecfemails@ph13trustee.com, philaecf@gmail.com

**23-10104-mdc Notice will not be electronically mailed to:**

**Fill in this information to identify the case:**

Debtor 1      Crystal G. Brown
(Spouse, if filing)

United States Bankruptcy Court for the EASTERN District of Pennsylvania

Case number  23-10104 MDC

Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. **Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

**U.S. Bank, N.A., successor trustee to LaSalle Bank National Association, on behalf of the holders of Bear Stearns Asset Backed Securities I Trust 2006-HE10, Asset-Backed Certificates Series 2006-HE10**

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☒ No

☐ Yes.   From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

**Select Portfolio Servicing, Inc.**
Name

**P.O. Box 65250**
Number        Street

**Salt Lake City    UT    84165-0250**
City            State        Zip Code

**1-800-258-8602**
Contact phone

Contact Email

Where should payments to the creditor be sent? (if different)

**Select Portfolio Servicing, Inc.**
Name

**Attn: Remittance Processing, P.O. Box 65450**
Number            Street

**Salt Lake City    UT    84165-0450**
City            State        Zip Code

**1-800-258-8602**
Contact phone

Contact Email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☒ No

☐ Yes.   Claim number on court claims registry (if known)_____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No

☐ Yes.   Who made the earlier filing? _____

**Part 2:    Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☐ No<br>☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor    2934 |

7. **How much is this claim?**    $244,016.21

**Does this amount include interest or other charges?**

☐ No
☒ Yes Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001 (c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

**Money Loaned**

9. **Is all or part of the claim secured?**

☐ No
☒ Yes.    The claim is secured by a lien on property.

Nature of property: **967 West Main Street Coatesville, PA 19320**

☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

Basis for perfection:    **Deed of Trust, Mortgage, Note**
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:    $_____
Amount of the claim that is secured:    **$244,016.21**

Amount of the claim that is unsecured: $_____    (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: **$89,452.81**

Annual Interest Rate (when case was filed) 5.0000%

☒ Fixed
☐ Variable

10. **Is this claim based on a lease?**

☒ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

11. **Is this claim subject to a right of setoff?**

☒ No
☐ Yes. Identify the property: _____

242

| | |
|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☒ No |
| | ☐ Yes. *Check all that apply:* **Amount entitled to priority** |

☐ Domestic support obligations (including alimony and child support) under
11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for
personal, family, or household use. 11 U.S.C. § 507(a)(7).                                   $_____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the
bankruptcy petition is filed or the debtor's business ends, whichever is earlier.        $_____
11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).                $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).                       $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(   ) that applies.                         $_____

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   **03/24/2023**
                  MM / DD / YYYY

**/s/ Brian C. Nicholas Esquire Attorney ID# 317240**
        Signature

**Print the name of the person who is completing and signing this claim:**

| | | | |
|---|---|---|---|
| Name | **Brian C. Nicholas** | | |
| | First name | Middle name | Last name |
| Title | **Bankruptcy Attorney** | | |
| Company | **KML Law Group, P.C.** | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | **701 Market Street, Suite 5000** | | |
| | Number    Street | | |
| | **Philadelphia** | **PA** | **19106** |
| | City | State | ZIP Code |
| Contact phone | **201-549-5366** | Email | **bnicholas@kmllawgroup.com** |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Crystal G. Brown | CHAPTER 13 |
| Debtor(s) | NO. 23-10104 MDC |

CERTIFICATE OF SERVICE

I, the undersigned, attorney for U.S. Bank, N.A., successor trustee to LaSalle Bank National Association, on behalf of the holders of Bear Stearns Asset Backed Securities I Trust 2006-HE10, Asset-Backed Certificates Series 2006-HE10 do hereby certify that true and correct copies of the foregoing Proof of Claim have been served March 24, 2023, by electronic filing upon those listed below:

Attorney for Debtor(s)
JOSEPH F. CLAFFY
Joseph F. Claffy & Associates, P.C.
26 South Church Street
Suite 1 South
West Chester, PA 19382

**Bankruptcy Trustee**
Kenneth E. West
Office of the Chapter 13 Standing Trustee (VIA ECF)
1234 Market Street - Suite 1813
Philadelphia, PA 19107

Date: March 24, 2023

**/s/ Brian C. Nicholas Esquire**
Brian C. Nicholas Esquire
Attorney I.D. 317240
KML Law Group, P.C.
BNY Mellon Independence Center
701 Market Street, Suite 5000
Philadelphia, PA 19106
201-549-5366
bnicholas@kmllawgroup.com

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage As Of Date Of Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case Number: | 23-10104 MDC | Principal Balance | $161,492.31 | Principal & Interest | $35,761.80 | Principal & Interest | $470.55 |
| Debtor 1 | Crystal G. Brown | Interest Due | $30,149.78 | Pre-petition Fees Due | $12,372.09 | | |
| Debtor 2 | | MIP Amount | $0.00 | Escrow Def For Funds Advanced | $40,002.03 | Monthly Escrow | $343.26 |
| Last 4 Digits to Identify | 2934 | Fees / Costs Due | $12,372.09 | Projected Escrow Shortage | $1,316.89 | | |
| Creditor | U.S. Bank, N.A., successor trustee to LaSalle Bank National Association, on behalf of the holders of Bear Stearns Asset Backed Securities I Trust 2006-HE10, Asset-Backed Certificates Series 2006-HE10 | Escrow Def for Funds Advanced | $40,002.03 | | | Mortgage Insurance | $0.00 |
| Servicer | SELECT PORTFOLIO SERVICING | Less Total Funds on Hand | $0.00 | Less Total Funds on Hand | $0.00 | | |
| Fixed Accrual, Daily Simple Interest or Other | Fixed | TOTAL DEBT | $244,016.21 | Total Prepetition Arrears | $89,452.81 | Total Monthly Payment | $813.81 |

**PART 5: Loan Payment History From First Date of Default**

| | Account Activity | | | | | How Funds Were Applied / Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| mm/dd/yyyy | + | + | +/- | from the list | | calculated | + | + | +/- | +/- | +/- | calculated | calculated | calculated | calculated | calculated |
| Date | Contractual Payment Amount | Funds Received | Amount Incurred | Description | Contractual Due Date | Prin Int & Esc Past Due Balance | Amount to Principal | Amount to Interest | Amount to Escrow | Amount to Fees or Charges | Unapplied funds | Principal Balance | Accrued Interest Balance | Escrow Balance | Fees/Charges Balance | Unapplied Funds Balance |
| | | | | | | 0.00 | | | | | | 161,556.79 | | 0.00 | 0.00 | 0.00 |
| 8/1/2016 | 470.55 | | | Monthly Payment Due | 8/1/2016 | 470.55 | | | | | | 161,556.79 | | 0.00 | 0.00 | 0.00 |
| 8/15/2016 | | | 1,421.59 | Taxes | 8/1/2016 | 470.55 | | | (1,421.59) | | | 161,556.79 | | (1,421.59) | 0.00 | 0.00 |
| 8/26/2016 | | | 112.67 | Insurance | 8/1/2016 | 470.55 | | | (112.67) | | | 161,556.79 | | (1,534.26) | 0.00 | 0.00 |
| 9/1/2016 | 470.55 | | | Monthly Payment Due | 8/1/2016 | 941.10 | | | | | | 161,556.79 | | (1,534.26) | 0.00 | 0.00 |
| 9/16/2016 | | | 23.52 | Late Charge | 8/1/2016 | 941.10 | | | | 23.52 | | 161,556.79 | | (1,534.26) | 23.52 | 0.00 |
| 9/19/2016 | | | 7,696.40 | Utilities | 8/1/2016 | 941.10 | | | (7,696.40) | | | 161,556.79 | | (9,230.66) | 23.52 | 0.00 |
| 9/20/2016 | | | 25.00 | Utilities | 8/1/2016 | 941.10 | | | (25.00) | | | 161,556.79 | | (9,255.66) | 23.52 | 0.00 |
| 9/26/2016 | | | 112.67 | Insurance | 8/1/2016 | 941.10 | | | (112.67) | | | 161,556.79 | | (9,368.33) | 23.52 | 0.00 |
| 10/1/2016 | 470.55 | | | Monthly Payment Due | 10/1/2016 | 1,411.65 | | | | | | 161,556.79 | | (9,368.33) | 23.52 | 0.00 |
| 10/17/2016 | | | 23.52 | Late Charge | 10/1/2016 | 1,411.65 | | | | 23.52 | | 161,556.79 | | (9,368.33) | 47.04 | 0.00 |
| 10/24/2016 | | 810.19 | | Monthly Payment Posted | 10/1/2016 | 601.46 | 64.48 | 406.07 | 316.12 | | | 161,492.31 | | (9,052.21) | 47.04 | 0.00 |
| 10/25/2016 | | | 15.00 | Property Inspection | 10/1/2016 | 601.46 | | | | 15.00 | | 161,492.31 | | (9,052.21) | 62.04 | 0.00 |
| 10/26/2016 | | 15.00 | | Property Inspection | 10/1/2016 | 601.46 | | | | (15.00) | | 161,492.31 | | (9,052.21) | 47.04 | 0.00 |
| 10/26/2016 | | | 112.67 | Insurance | 10/1/2016 | 601.46 | | | (112.67) | | | 161,492.31 | | (9,164.88) | 47.04 | 0.00 |
| 11/1/2016 | 470.55 | | | Monthly Payment Due | 10/1/2016 | 1,072.01 | | | | | | 161,492.31 | | (9,164.88) | 47.04 | 0.00 |
| 11/29/2016 | | | 112.67 | Insurance | 10/1/2016 | 1,072.01 | | | (112.67) | | | 161,492.31 | | (9,277.55) | 47.04 | 0.00 |
| 12/1/2016 | 775.85 | | | Monthly Payment Due | 10/1/2016 | 1,847.86 | | | | | | 161,492.31 | | (9,277.55) | 47.04 | 0.00 |
| 12/27/2016 | | | 112.67 | Insurance | 10/1/2016 | 1,847.86 | | | (112.67) | | | 161,492.31 | | (9,390.22) | 47.04 | 0.00 |
| 1/1/2017 | 775.85 | | | Monthly Payment Due | 10/1/2016 | 2,623.71 | | | | | | 161,492.31 | | (9,390.22) | 47.04 | 0.00 |
| 1/25/2017 | | | 285.80 | Taxes | 10/1/2016 | 2,623.71 | | | (285.80) | | | 161,492.31 | | (9,676.02) | 47.04 | 0.00 |
| 1/26/2017 | | | 112.67 | Insurance | 10/1/2016 | 2,623.71 | | | (112.67) | | | 161,492.31 | | (9,788.69) | 47.04 | 0.00 |
| 2/1/2017 | 775.85 | | | Monthly Payment Due | 10/1/2016 | 3,399.56 | | | | | | 161,492.31 | | (9,788.69) | 47.04 | 0.00 |
| 2/2/2017 | | | 932.00 | Insurance | 10/1/2016 | 3,399.56 | | | (932.00) | | | 161,492.31 | | (10,720.69) | 47.04 | 0.00 |
| 2/6/2017 | | 194.37 | | Refund | 10/1/2016 | 3,399.56 | | | 194.37 | | | 161,492.31 | | (10,526.32) | 47.04 | 0.00 |
| 3/1/2017 | 775.85 | | | Monthly Payment Due | 10/1/2016 | 4,175.41 | | | | | | 161,492.31 | | (10,526.32) | 47.04 | 0.00 |
| 3/20/2017 | | | 130.83 | Taxes | 10/1/2016 | 4,175.41 | | | (130.83) | | | 161,492.31 | | (10,657.15) | 47.04 | 0.00 |
| 3/21/2017 | | 201.72 | | Tax Refund | 10/1/2016 | 4,175.41 | | | 201.72 | | | 161,492.31 | | (10,455.43) | 47.04 | 0.00 |
| 4/1/2017 | 775.85 | | | Monthly Payment Due | 10/1/2016 | 4,951.26 | | | | | | 161,492.31 | | (10,455.43) | 47.04 | 0.00 |
| 5/1/2017 | 775.85 | | | Monthly Payment Due | 10/1/2016 | 5,727.11 | | | | | | 161,492.31 | | (10,455.43) | 47.04 | 0.00 |
| 6/1/2017 | 757.45 | | | Monthly Payment Due | 10/1/2016 | 6,484.56 | | | | | | 161,492.31 | | (10,455.43) | 47.04 | 0.00 |
| 7/1/2017 | 757.45 | | | Monthly Payment Due | 10/1/2016 | 7,242.01 | | | | | | 161,492.31 | | (10,455.43) | 47.04 | 0.00 |
| 8/1/2017 | 757.45 | | | Monthly Payment Due | 10/1/2016 | 7,999.46 | | | | | | 161,492.31 | | (10,455.43) | 47.04 | 0.00 |
| 8/24/2017 | | | 2,034.28 | Taxes | 10/1/2016 | 7,999.46 | | | (2,034.28) | | | 161,492.31 | | (12,489.71) | 47.04 | 0.00 |
| 9/1/2017 | 757.45 | | | Monthly Payment Due | 10/1/2016 | 8,756.91 | | | | | | 161,492.31 | | (12,489.71) | 47.04 | 0.00 |
| 9/6/2017 | | 264.31 | | Refund | 10/1/2016 | 8,756.91 | | | 264.31 | | | 161,492.31 | | (12,225.40) | 47.04 | 0.00 |
| 10/1/2017 | 757.45 | | | Monthly Payment Due | 10/1/2016 | 9,514.36 | | | | | | 161,492.31 | | (12,225.40) | 47.04 | 0.00 |
| 11/1/2017 | 757.45 | | | Monthly Payment Due | 10/1/2016 | 10,271.81 | | | | | | 161,492.31 | | (12,225.40) | 47.04 | 0.00 |
| 12/1/2017 | 757.45 | | | Monthly Payment Due | 10/1/2016 | 11,029.26 | | | | | | 161,492.31 | | (12,225.40) | 47.04 | 0.00 |
| 1/1/2018 | 757.45 | | | Monthly Payment Due | 10/1/2016 | 11,786.71 | | | | | | 161,492.31 | | (12,225.40) | 47.04 | 0.00 |
| 1/6/2018 | 752.46 | | | Monthly Payment Due | 10/1/2016 | 12,539.17 | | | | | | 161,492.31 | | (12,225.40) | 47.04 | 0.00 |
| 1/7/2018 | 752.46 | | | Monthly Payment Due | 10/1/2016 | 13,291.63 | | | | | | 161,492.31 | | (12,225.40) | 47.04 | 0.00 |
| 1/8/2018 | 752.46 | | | Monthly Payment Due | 10/1/2016 | 14,044.09 | | | | | | 161,492.31 | | (12,225.40) | 47.04 | 0.00 |
| 1/9/2018 | 752.46 | | | Monthly Payment Due | 10/1/2016 | 14,796.55 | | | | | | 161,492.31 | | (12,225.40) | 47.04 | 0.00 |
| 1/22/2018 | | | 285.80 | Taxes | 10/1/2016 | 14,796.55 | | | (285.80) | | | 161,492.31 | | (12,511.20) | 47.04 | 0.00 |

41011352545

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage As Of Date Of Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case Number: | 23-10104 MDC | Principal Balance | $161,492.31 | Principal & Interest | $35,761.80 | Principal & Interest | $470.55 |
| Debtor 1 | Crystal G. Brown | Interest Due | $30,149.78 | Pre-petition Fees Due | $12,372.09 | | |
| Debtor 2 | | MIP Amount | $0.00 | Escrow Def For Funds Advanced | $40,002.03 | Monthly Escrow | $343.26 |
| Last 4 Digits to Identify | 2934 | Fees / Costs Due | $12,372.09 | Projected Escrow Shortage | $1,316.89 | | |
| Creditor | U.S. Bank, N.A., successor trustee to LaSalle Bank National Association, on behalf of the holders of Bear Stearns Asset Backed Securities I Trust 2006-HE10, Asset-Backed Certificates Series 2006-HE10 | Escrow Def for Funds Advanced | $40,002.03 | | | Mortgage Insurance | $0.00 |
| Servicer | SELECT PORTFOLIO SERVICING | Less Total Funds on Hand | $0.00 | Less Total Funds on Hand | $0.00 | | |
| Fixed Accrual, Daily Simple Interest or Other | Fixed | TOTAL DEBT | $244,016.21 | Total Prepetition Arrears | $89,452.81 | Total Monthly Payment | $813.81 |

**PART 5: Loan Payment History From First Date of Default**

| | | Account Activity | | | | How Funds Were Applied / Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| mm/dd/yyyy | + | + | + / - | from the list | | calculated | + | + | + / - | + / - | + / - | calculated | calculated | calculated | calculated | calculated |
| Date | Contractual Payment Amount | Funds Received | Amount Incurred | Description | Contractual Due Date | Prin Int & Esc Past Due Balance | Amount to Principal | Amount to Interest | Amount to Escrow | Amount to Fees or Charges | Unapplied funds | Principal Balance | Accrued Interest Balance | Escrow Balance | Fees/Charges Balance | Unapplied Funds Balance |
| 2/1/2018 | 757.45 | | | Monthly Payment Due | 10/1/2016 | 15,554.00 | | | | | | 161,492.31 | | (12,511.20) | 47.04 | 0.00 |
| 3/1/2018 | 757.45 | | | Monthly Payment Due | 10/1/2016 | 16,311.45 | | | | | | 161,492.31 | | (12,511.20) | 47.04 | 0.00 |
| 3/16/2018 | | | 215.87 | Taxes | 10/1/2016 | 16,311.45 | | | (215.87) | | | 161,492.31 | | (12,727.07) | 47.04 | 0.00 |
| 3/28/2018 | | | 1,109.00 | Insurance | 10/1/2016 | 16,311.45 | | | (1,109.00) | | | 161,492.31 | | (13,836.07) | 47.04 | 0.00 |
| 4/1/2018 | 752.46 | | | Monthly Payment Due | 10/1/2016 | 17,063.91 | | | | | | 161,492.31 | | (13,836.07) | 47.04 | 0.00 |
| 5/1/2018 | 752.46 | | | Monthly Payment Due | 10/1/2016 | 17,816.37 | | | | | | 161,492.31 | | (13,836.07) | 47.04 | 0.00 |
| 5/9/2018 | | | 15.00 | Property Inspection | 10/1/2016 | 17,816.37 | | | | 15.00 | | 161,492.31 | | (13,836.07) | 62.04 | 0.00 |
| 5/30/2018 | | | 280.26 | Insurance | 10/1/2016 | 17,816.37 | | | (280.26) | | | 161,492.31 | | (14,116.33) | 62.04 | 0.00 |
| 6/7/2018 | | | 93.42 | Insurance | 10/1/2016 | 17,816.37 | | | (93.42) | | | 161,492.31 | | (14,209.75) | 62.04 | 0.00 |
| 7/11/2018 | | | 250.00 | Foreclosure Costs | 10/1/2016 | 17,816.37 | | | | 250.00 | | 161,492.31 | | (14,209.75) | 312.04 | 0.00 |
| 7/13/2018 | | | 93.42 | Insurance | 10/1/2016 | 17,816.37 | | | (93.42) | | | 161,492.31 | | (14,303.17) | 312.04 | 0.00 |
| 7/18/2018 | | | 15.00 | Property Inspection | 10/1/2016 | 17,816.37 | | | | 15.00 | | 161,492.31 | | (14,303.17) | 327.04 | 0.00 |
| 8/13/2018 | | | 93.42 | Insurance | 10/1/2016 | 17,816.37 | | | (93.42) | | | 161,492.31 | | (14,396.59) | 327.04 | 0.00 |
| 8/16/2018 | | | 2,154.69 | Taxes | 10/1/2016 | 17,816.37 | | | (2,154.69) | | | 161,492.31 | | (16,551.28) | 327.04 | 0.00 |
| 8/21/2018 | | | 15.00 | Property Inspection | 10/1/2016 | 17,816.37 | | | | 15.00 | | 161,492.31 | | (16,551.28) | 342.04 | 0.00 |
| 9/13/2018 | | | 93.42 | Insurance | 10/1/2016 | 17,816.37 | | | (93.42) | | | 161,492.31 | | (16,644.70) | 342.04 | 0.00 |
| 9/21/2018 | | | 15.00 | Property Inspection | 10/1/2016 | 17,816.37 | | | | 15.00 | | 161,492.31 | | (16,644.70) | 357.04 | 0.00 |
| 10/1/2018 | 752.46 | | | Monthly Payment Due | 10/1/2016 | 18,568.83 | | | | | | 161,492.31 | | (16,644.70) | 357.04 | 0.00 |
| 10/16/2018 | | | 93.42 | Insurance | 10/1/2016 | 18,568.83 | | | (93.42) | | | 161,492.31 | | (16,738.12) | 357.04 | 0.00 |
| 10/25/2018 | | | 15.00 | Property Inspection | 10/1/2016 | 18,568.83 | | | | 15.00 | | 161,492.31 | | (16,738.12) | 372.04 | 0.00 |
| 11/1/2018 | 752.46 | | | Monthly Payment Due | 10/1/2016 | 19,321.29 | | | | | | 161,492.31 | | (16,738.12) | 372.04 | 0.00 |
| 11/13/2018 | | | 93.42 | Insurance | 10/1/2016 | 19,321.29 | | | (93.42) | | | 161,492.31 | | (16,831.54) | 372.04 | 0.00 |
| 11/29/2018 | | | 15.00 | Property Inspection | 10/1/2016 | 19,321.29 | | | | 15.00 | | 161,492.31 | | (16,831.54) | 387.04 | 0.00 |
| 12/1/2018 | 1,004.91 | | | Monthly Payment Due | 10/1/2016 | 20,326.20 | | | | | | 161,492.31 | | (16,831.54) | 387.04 | 0.00 |
| 12/13/2018 | | | 93.42 | Insurance | 10/1/2016 | 20,326.20 | | | (93.42) | | | 161,492.31 | | (16,924.96) | 387.04 | 0.00 |
| 1/1/2019 | 1,004.91 | | | Monthly Payment Due | 10/1/2016 | 21,331.11 | | | | | | 161,492.31 | | (16,924.96) | 387.04 | 0.00 |
| 1/2/2019 | | | 350.00 | Appraisal | 10/1/2016 | 21,331.11 | | | | 350.00 | | 161,492.31 | | (16,924.96) | 737.04 | 0.00 |
| 1/14/2019 | | | 93.42 | Insurance | 10/1/2016 | 21,331.11 | | | (93.42) | | | 161,492.31 | | (17,018.38) | 737.04 | 0.00 |
| 1/22/2019 | | | 285.80 | Taxes | 10/1/2016 | 21,331.11 | | | (285.80) | | | 161,492.31 | | (17,304.18) | 737.04 | 0.00 |
| 2/1/2019 | 1,004.91 | | | Monthly Payment Due | 10/1/2016 | 22,336.02 | | | | | | 161,492.31 | | (17,304.18) | 737.04 | 0.00 |
| 2/4/2019 | | | 15.00 | Property Inspection | 10/1/2016 | 22,336.02 | | | | 15.00 | | 161,492.31 | | (17,304.18) | 752.04 | 0.00 |
| 2/7/2019 | | | 215.87 | Taxes | 10/1/2016 | 22,336.02 | | | (215.87) | | | 161,492.31 | | (17,520.05) | 752.04 | 0.00 |
| 2/13/2019 | | | 93.38 | Insurance | 10/1/2016 | 22,336.02 | | | (93.38) | | | 161,492.31 | | (17,613.43) | 752.04 | 0.00 |
| 3/1/2019 | 1,004.91 | | | Monthly Payment Due | 10/1/2016 | 23,340.93 | | | | | | 161,492.31 | | (17,613.43) | 752.04 | 0.00 |
| 3/11/2019 | | | 15.00 | Property Inspection | 10/1/2016 | 23,340.93 | | | | 15.00 | | 161,492.31 | | (17,613.43) | 767.04 | 0.00 |
| 3/18/2019 | | | 75.00 | Foreclosure Costs | 10/1/2016 | 23,340.93 | | | | 75.00 | | 161,492.31 | | (17,613.43) | 842.04 | 0.00 |
| 3/19/2019 | | | 95.75 | Insurance | 10/1/2016 | 23,340.93 | | | (95.75) | | | 161,492.31 | | (17,709.18) | 842.04 | 0.00 |
| 3/26/2019 | | | 1,960.00 | FC Attorney Fees | 10/1/2016 | 23,340.93 | | | | 1,960.00 | | 161,492.31 | | (17,709.18) | 2,802.04 | 0.00 |
| 3/26/2019 | | | 2,323.13 | Foreclosure Costs | 10/1/2016 | 23,340.93 | | | | 2,323.13 | | 161,492.31 | | (17,709.18) | 5,125.17 | 0.00 |
| 4/1/2019 | 1,004.91 | | | Monthly Payment Due | 10/1/2016 | 24,345.84 | | | | | | 161,492.31 | | (17,709.18) | 5,125.17 | 0.00 |
| 4/16/2019 | | | 95.75 | Insurance | 10/1/2016 | 24,345.84 | | | (95.75) | | | 161,492.31 | | (17,804.93) | 5,125.17 | 0.00 |
| 5/1/2019 | 1,004.91 | | | Monthly Payment Due | 10/1/2016 | 25,350.75 | | | | | | 161,492.31 | | (17,804.93) | 5,125.17 | 0.00 |
| 5/13/2019 | | | 95.75 | Insurance | 10/1/2016 | 25,350.75 | | | (95.75) | | | 161,492.31 | | (17,900.68) | 5,125.17 | 0.00 |
| 5/14/2019 | | | 15.00 | Property Inspection | 10/1/2016 | 25,350.75 | | | | 15.00 | | 161,492.31 | | (17,900.68) | 5,140.17 | 0.00 |
| 6/1/2019 | 1,004.91 | | | Monthly Payment Due | 10/1/2016 | 26,355.66 | | | | | | 161,492.31 | | (17,900.68) | 5,140.17 | 0.00 |

| Part 1: Mortgage and Case Information | | | Part 2: Total Debt Calculation | | Part 3: Arrearage As Of Date Of Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|---|
| Case Number: | 23-10104 MDC | | Principal Balance | $161,492.31 | Principal & Interest | $35,761.80 | Principal & Interest | $470.55 |
| Debtor 1 | Crystal G. Brown | | Interest Due | $30,149.78 | Pre-petition Fees Due | $12,372.09 | | |
| Debtor 2 | | | MIP Amount | $0.00 | Escrow Def For Funds Advanced | $40,002.03 | Monthly Escrow | $343.26 |
| Last 4 Digits to Identify | 2934 | | Fees / Costs Due | $12,372.09 | Projected Escrow Shortage | $1,316.89 | | |
| Creditor | U.S. Bank, N.A., successor trustee to LaSalle Bank National Association, on behalf of the holders of Bear Stearns Asset Backed Securities I Trust 2006-HE10, Asset-Backed Certificates Series 2006-HE10 | | Escrow Def for Funds Advanced | $40,002.03 | | | Mortgage Insurance | $0.00 |
| Servicer | SELECT PORTFOLIO SERVICING | | Less Total Funds on Hand | $0.00 | Less Total Funds on Hand | $0.00 | | |
| Fixed Accrual, Daily Simple Interest or Other | Fixed | | TOTAL DEBT | $244,016.21 | Total Prepetition Arrears | $89,452.81 | Total Monthly Payment | $813.81 |

**PART 5: Loan Payment History From First Date of Default**

| | | Account Activity | | | | How Funds Were Applied / Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| mm/dd/yyyy | + | + | + / - | from the list | | calculated | + | + | + / - | + / - | + / - | calculated | calculated | calculated | calculated | calculated |
| Date | Contractual Payment Amount | Funds Received | Amount Incurred | Description | Contractual Due Date | Prin Int & Esc Past Due Balance | Amount to Principal | Amount to Interest | Amount to Escrow | Amount to Fees or Charges | Unapplied funds | Principal Balance | Accrued Interest Balance | Escrow Balance | Fees/Charges Balance | Unapplied Funds Balance |
| 6/14/2019 | | | 15.00 | Property Inspection | 10/1/2016 | 26,355.66 | | | | 15.00 | | 161,492.31 | | (17,900.68) | 5,155.17 | 0.00 |
| 6/14/2019 | | | 95.75 | Insurance | 10/1/2016 | 26,355.66 | | | (95.75) | | | 161,492.31 | | (17,996.43) | 5,155.17 | 0.00 |
| 6/28/2019 | | | 100.00 | FC Attorney Fees | 10/1/2016 | 26,355.66 | | | | 100.00 | | 161,492.31 | | (17,996.43) | 5,255.17 | 0.00 |
| 6/29/2019 | | | 156.40 | Foreclosure Costs | 10/1/2016 | 26,355.66 | | | | 156.40 | | 161,492.31 | | (17,996.43) | 5,411.57 | 0.00 |
| 7/1/2019 | 787.67 | | | Monthly Payment Due | 10/1/2016 | 27,143.33 | | | | | | 161,492.31 | | (17,996.43) | 5,411.57 | 0.00 |
| 7/16/2019 | | | 95.75 | Insurance | 10/1/2016 | 27,143.33 | | | (95.75) | | | 161,492.31 | | (18,092.18) | 5,411.57 | 0.00 |
| 8/1/2019 | 787.67 | | | Monthly Payment Due | 10/1/2016 | 27,931.00 | | | | | | 161,492.31 | | (18,092.18) | 5,411.57 | 0.00 |
| 8/14/2019 | | | 95.75 | Insurance | 10/1/2016 | 27,931.00 | | | (95.75) | | | 161,492.31 | | (18,187.93) | 5,411.57 | 0.00 |
| 8/19/2019 | | | 2,245.74 | Taxes | 10/1/2016 | 27,931.00 | | | (2,245.74) | | | 161,492.31 | | (20,433.67) | 5,411.57 | 0.00 |
| 8/20/2019 | | | 100.00 | FC Attorney Fees | 10/1/2016 | 27,931.00 | | | | 100.00 | | 161,492.31 | | (20,433.67) | 5,511.57 | 0.00 |
| 8/21/2019 | | 100.00 | | FC Attorney Fees | 10/1/2016 | 27,931.00 | | | | (100.00) | | 161,492.31 | | (20,433.67) | 5,411.57 | 0.00 |
| 9/1/2019 | 787.67 | | | Monthly Payment Due | 10/1/2016 | 28,718.67 | | | | | | 161,492.31 | | (20,433.67) | 5,411.57 | 0.00 |
| 9/6/2019 | | 100.00 | | FC Attorney Fees | 10/1/2016 | 28,718.67 | | | | (100.00) | | 161,492.31 | | (20,433.67) | 5,311.57 | 0.00 |
| 9/16/2019 | | | 95.75 | Insurance | 10/1/2016 | 28,718.67 | | | (95.75) | | | 161,492.31 | | (20,529.42) | 5,311.57 | 0.00 |
| 10/1/2019 | 787.67 | | | Monthly Payment Due | 10/1/2016 | 29,506.34 | | | | | | 161,492.31 | | (20,529.42) | 5,311.57 | 0.00 |
| 10/15/2019 | | | 95.75 | Insurance | 10/1/2016 | 29,506.34 | | | (95.75) | | | 161,492.31 | | (20,625.17) | 5,311.57 | 0.00 |
| 11/1/2019 | 787.67 | | | Monthly Payment Due | 10/1/2016 | 30,294.01 | | | | | | 161,492.31 | | (20,625.17) | 5,311.57 | 0.00 |
| 11/14/2019 | | | 95.75 | Insurance | 10/1/2016 | 30,294.01 | | | (95.75) | | | 161,492.31 | | (20,720.92) | 5,311.57 | 0.00 |
| 12/1/2019 | 787.67 | | | Monthly Payment Due | 10/1/2016 | 31,081.68 | | | | | | 161,492.31 | | (20,720.92) | 5,311.57 | 0.00 |
| 12/16/2019 | | | 95.75 | Insurance | 10/1/2016 | 31,081.68 | | | (95.75) | | | 161,492.31 | | (20,816.67) | 5,311.57 | 0.00 |
| 12/27/2019 | | | 15.00 | Property Inspection | 10/1/2016 | 31,081.68 | | | | 15.00 | | 161,492.31 | | (20,816.67) | 5,326.57 | 0.00 |
| 1/1/2020 | 787.67 | | | Monthly Payment Due | 10/1/2016 | 31,869.35 | | | | | | 161,492.31 | | (20,816.67) | 5,326.57 | 0.00 |
| 1/14/2020 | | | 95.75 | Insurance | 10/1/2016 | 31,869.35 | | | (95.75) | | | 161,492.31 | | (20,912.42) | 5,326.57 | 0.00 |
| 1/17/2020 | | | 285.80 | Taxes | 10/1/2016 | 31,869.35 | | | (285.80) | | | 161,492.31 | | (21,198.22) | 5,326.57 | 0.00 |
| 1/30/2020 | | | 15.00 | Property Inspection | 10/1/2016 | 31,869.35 | | | | 15.00 | | 161,492.31 | | (21,198.22) | 5,341.57 | 0.00 |
| 2/1/2020 | 787.67 | | | Monthly Payment Due | 10/1/2016 | 32,657.02 | | | | | | 161,492.31 | | (21,198.22) | 5,341.57 | 0.00 |
| 2/6/2020 | | | 825.00 | FC Attorney Fees | 10/1/2016 | 32,657.02 | | | | 825.00 | | 161,492.31 | | (21,198.22) | 6,166.57 | 0.00 |
| 2/7/2020 | | | 2,035.50 | FC Attorney Fees | 10/1/2016 | 32,657.02 | | | | 2,035.50 | | 161,492.31 | | (21,198.22) | 8,202.07 | 0.00 |
| 2/14/2020 | | | 95.75 | Insurance | 10/1/2016 | 32,657.02 | | | (95.75) | | | 161,492.31 | | (21,293.97) | 8,202.07 | 0.00 |
| 2/25/2020 | | | 75.00 | Foreclosure Costs | 10/1/2016 | 32,657.02 | | | | 75.00 | | 161,492.31 | | (21,293.97) | 8,277.07 | 0.00 |
| 3/1/2020 | 787.67 | | | Monthly Payment Due | 10/1/2016 | 33,444.69 | | | | | | 161,492.31 | | (21,293.97) | 8,277.07 | 0.00 |
| 3/4/2020 | | | 15.00 | Property Inspection | 10/1/2016 | 33,444.69 | | | | 15.00 | | 161,492.31 | | (21,293.97) | 8,292.07 | 0.00 |
| 3/19/2020 | | | 97.09 | Insurance | 10/1/2016 | 33,444.69 | | | (97.09) | | | 161,492.31 | | (21,391.06) | 8,292.07 | 0.00 |
| 4/1/2020 | 787.67 | | | Monthly Payment Due | 10/1/2016 | 34,232.36 | | | | | | 161,492.31 | | (21,391.06) | 8,292.07 | 0.00 |
| 4/13/2020 | | | 15.00 | Property Inspection | 10/1/2016 | 34,232.36 | | | | 15.00 | | 161,492.31 | | (21,391.06) | 8,307.07 | 0.00 |
| 4/14/2020 | | | 97.09 | Insurance | 10/1/2016 | 34,232.36 | | | (97.09) | | | 161,492.31 | | (21,488.15) | 8,307.07 | 0.00 |
| 5/1/2020 | 787.67 | | | Monthly Payment Due | 10/1/2016 | 35,020.03 | | | | | | 161,492.31 | | (21,488.15) | 8,307.07 | 0.00 |
| 5/14/2020 | | | 97.09 | Insurance | 10/1/2016 | 35,020.03 | | | (97.09) | | | 161,492.31 | | (21,585.24) | 8,307.07 | 0.00 |
| 5/18/2020 | | | 15.00 | Property Inspection | 10/1/2016 | 35,020.03 | | | | 15.00 | | 161,492.31 | | (21,585.24) | 8,322.07 | 0.00 |
| 6/1/2020 | 787.67 | | | Monthly Payment Due | 10/1/2016 | 35,807.70 | | | | | | 161,492.31 | | (21,585.24) | 8,322.07 | 0.00 |
| 6/4/2020 | | | 172.88 | Foreclosure Costs | 10/1/2016 | 35,807.70 | | | | 172.88 | | 161,492.31 | | (21,585.24) | 8,494.95 | 0.00 |
| 6/16/2020 | | | 97.09 | Insurance | 10/1/2016 | 35,807.70 | | | (97.09) | | | 161,492.31 | | (21,682.33) | 8,494.95 | 0.00 |
| 6/22/2020 | | | 15.00 | Property Inspection | 10/1/2016 | 35,807.70 | | | | 15.00 | | 161,492.31 | | (21,682.33) | 8,509.95 | 0.00 |
| 7/1/2020 | 787.67 | | | Monthly Payment Due | 10/1/2016 | 36,595.37 | | | | | | 161,492.31 | | (21,682.33) | 8,509.95 | 0.00 |
| 7/15/2020 | | | 97.09 | Insurance | 10/1/2016 | 36,595.37 | | | (97.09) | | | 161,492.31 | | (21,779.42) | 8,509.95 | 0.00 |

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage As Of Date Of Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case Number: | 23-10104 MDC | Principal Balance | $161,492.31 | Principal & Interest | $35,761.80 | Principal & Interest | $470.55 |
| Debtor 1 | Crystal G. Brown | Interest Due | $30,149.78 | Pre-petition Fees Due | $12,372.09 | | |
| Debtor 2 | | MIP Amount | $0.00 | Escrow Def For Funds Advanced | $40,002.03 | Monthly Escrow | $343.26 |
| Last 4 Digits to Identify | 2934 | Fees / Costs Due | $12,372.09 | Projected Escrow Shortage | $1,316.89 | | |
| Creditor | U.S. Bank, N.A., successor trustee to LaSalle Bank National Association, on behalf of the holders of Bear Stearns Asset Backed Securities I Trust 2006-HE10, Asset-Backed Certificates Series 2006-HE10 | Escrow Def for Funds Advanced | $40,002.03 | | | Mortgage Insurance | $0.00 |
| Servicer | SELECT PORTFOLIO SERVICING | Less Total Funds on Hand | $0.00 | Less Total Funds on Hand | $0.00 | | |
| Fixed Accrual, Daily Simple Interest or Other | Fixed | TOTAL DEBT | $244,016.21 | Total Prepetition Arrears | $89,452.81 | Total Monthly Payment | $813.81 |

**PART 5: Loan Payment History From First Date of Default**

| | Account Activity | | | | | How Funds Were Applied / Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| mm/dd/yyyy | + | + | +/- | from the list | | calculated | + | + | +/- | +/- | +/- | calculated | calculated | calculated | calculated | calculated |
| Date | Contractual Payment Amount | Funds Received | Amount Incurred | Description | Contractual Due Date | Prin Int & Esc Past Due Balance | Amount to Principal | Amount to Interest | Amount to Escrow | Amount to Fees or Charges | Unapplied funds | Principal Balance | Accrued Interest Balance | Escrow Balance | Fees/Charges Balance | Unapplied Funds Balance |
| 7/28/2020 | | | 15.00 | Property Inspection | 10/1/2016 | 36,595.37 | | | | 15.00 | | 161,492.31 | | (21,779.42) | 8,524.95 | 0.00 |
| 8/1/2020 | 989.79 | | | Monthly Payment Due | 10/1/2016 | 37,585.16 | | | | | | 161,492.31 | | (21,779.42) | 8,524.95 | 0.00 |
| 8/4/2020 | | | 2,690.33 | Taxes | 10/1/2016 | 37,585.16 | | | (2,690.33) | | | 161,492.31 | | (24,469.75) | 8,524.95 | 0.00 |
| 8/5/2020 | | | 1,229.10 | Taxes | 10/1/2016 | 37,585.16 | | | (1,229.10) | | | 161,492.31 | | (25,698.85) | 8,524.95 | 0.00 |
| 8/12/2020 | | | 2,249.64 | Taxes | 10/1/2016 | 37,585.16 | | | (2,249.64) | | | 161,492.31 | | (27,948.49) | 8,524.95 | 0.00 |
| 8/17/2020 | | | 97.09 | Insurance | 10/1/2016 | 37,585.16 | | | (97.09) | | | 161,492.31 | | (28,045.58) | 8,524.95 | 0.00 |
| 9/1/2020 | 989.79 | | | Monthly Payment Due | 10/1/2016 | 38,574.95 | | | | | | 161,492.31 | | (28,045.58) | 8,524.95 | 0.00 |
| 9/3/2020 | | | 15.00 | Property Inspection | 10/1/2016 | 38,574.95 | | | | 15.00 | | 161,492.31 | | (28,045.58) | 8,539.95 | 0.00 |
| 9/6/2020 | | | 97.09 | Insurance | 10/1/2016 | 38,574.95 | | | (97.09) | | | 161,492.31 | | (28,142.67) | 8,539.95 | 0.00 |
| 9/25/2020 | | | 3.50 | Foreclosure Costs | 10/1/2016 | 38,574.95 | | | | 3.50 | | 161,492.31 | | (28,142.67) | 8,543.45 | 0.00 |
| 10/1/2020 | 989.79 | | | Monthly Payment Due | 10/1/2016 | 39,564.74 | | | | | | 161,492.31 | | (28,142.67) | 8,543.45 | 0.00 |
| 10/9/2020 | | | 15.00 | Property Inspection | 10/1/2016 | 39,564.74 | | | | 15.00 | | 161,492.31 | | (28,142.67) | 8,558.45 | 0.00 |
| 10/15/2020 | | | 97.09 | Insurance | 10/1/2016 | 39,564.74 | | | (97.09) | | | 161,492.31 | | (28,239.76) | 8,558.45 | 0.00 |
| 11/1/2020 | 989.79 | | | Monthly Payment Due | 10/1/2016 | 40,554.53 | | | | | | 161,492.31 | | (28,239.76) | 8,558.45 | 0.00 |
| 11/13/2020 | | | 15.00 | Property Inspection | 10/1/2016 | 40,554.53 | | | | 15.00 | | 161,492.31 | | (28,239.76) | 8,573.45 | 0.00 |
| 11/17/2020 | | | 97.09 | Insurance | 10/1/2016 | 40,554.53 | | | (97.09) | | | 161,492.31 | | (28,336.85) | 8,573.45 | 0.00 |
| 12/1/2020 | 989.79 | | | Monthly Payment Due | 10/1/2016 | 41,544.32 | | | | | | 161,492.31 | | (28,336.85) | 8,573.45 | 0.00 |
| 12/16/2020 | | | 97.09 | Insurance | 10/1/2016 | 41,544.32 | | | (97.09) | | | 161,492.31 | | (28,433.94) | 8,573.45 | 0.00 |
| 12/21/2020 | | | 18.00 | Property Inspection | 10/1/2016 | 41,544.32 | | | | 18.00 | | 161,492.31 | | (28,433.94) | 8,591.45 | 0.00 |
| 1/1/2021 | 989.79 | | | Monthly Payment Due | 10/1/2016 | 42,534.11 | | | | | | 161,492.31 | | (28,433.94) | 8,591.45 | 0.00 |
| 1/15/2021 | | | 97.09 | Insurance | 10/1/2016 | 42,534.11 | | | (97.09) | | | 161,492.31 | | (28,531.03) | 8,591.45 | 0.00 |
| 1/25/2021 | | | 18.00 | Property Inspection | 10/1/2016 | 42,534.11 | | | | 18.00 | | 161,492.31 | | (28,531.03) | 8,609.45 | 0.00 |
| 1/25/2021 | | | 297.70 | Taxes | 10/1/2016 | 42,534.11 | | | (297.70) | | | 161,492.31 | | (28,828.73) | 8,609.45 | 0.00 |
| 2/1/2021 | 989.79 | | | Monthly Payment Due | 10/1/2016 | 43,523.90 | | | | | | 161,492.31 | | (28,828.73) | 8,609.45 | 0.00 |
| 2/5/2021 | | | 3.62 | Foreclosure Costs | 10/1/2016 | 43,523.90 | | | | 3.62 | | 161,492.31 | | (28,828.73) | 8,613.07 | 0.00 |
| 2/10/2021 | | | 248.58 | Taxes | 10/1/2016 | 43,523.90 | | | (248.58) | | | 161,492.31 | | (29,077.31) | 8,613.07 | 0.00 |
| 2/11/2021 | | | 3.50 | Foreclosure Costs | 10/1/2016 | 43,523.90 | | | | 3.50 | | 161,492.31 | | (29,077.31) | 8,616.57 | 0.00 |
| 2/17/2021 | | | 97.01 | Insurance | 10/1/2016 | 43,523.90 | | | (97.01) | | | 161,492.31 | | (29,174.32) | 8,616.57 | 0.00 |
| 3/1/2021 | 989.79 | | | Monthly Payment Due | 10/1/2016 | 44,513.69 | | | | | | 161,492.31 | | (29,174.32) | 8,616.57 | 0.00 |
| 3/5/2021 | | | 18.00 | Property Inspection | 10/1/2016 | 44,513.69 | | | | 18.00 | | 161,492.31 | | (29,174.32) | 8,634.57 | 0.00 |
| 3/11/2021 | | | 3.62 | Foreclosure Costs | 10/1/2016 | 44,513.69 | | | | 3.62 | | 161,492.31 | | (29,174.32) | 8,638.19 | 0.00 |
| 3/19/2021 | | | 97.92 | Insurance | 10/1/2016 | 44,513.69 | | | (97.92) | | | 161,492.31 | | (29,272.24) | 8,638.19 | 0.00 |
| 4/1/2021 | 989.79 | | | Monthly Payment Due | 10/1/2016 | 45,503.48 | | | | | | 161,492.31 | | (29,272.24) | 8,638.19 | 0.00 |
| 4/12/2021 | | | 3.62 | Foreclosure Costs | 10/1/2016 | 45,503.48 | | | | 3.62 | | 161,492.31 | | (29,272.24) | 8,641.81 | 0.00 |
| 4/14/2021 | | | 18.00 | Property Inspection | 10/1/2016 | 45,503.48 | | | | 18.00 | | 161,492.31 | | (29,272.24) | 8,659.81 | 0.00 |
| 4/15/2021 | | | 97.92 | Insurance | 10/1/2016 | 45,503.48 | | | (97.92) | | | 161,492.31 | | (29,370.16) | 8,659.81 | 0.00 |
| 5/1/2021 | 989.79 | | | Monthly Payment Due | 10/1/2016 | 46,493.27 | | | | | | 161,492.31 | | (29,370.16) | 8,659.81 | 0.00 |
| 5/17/2021 | | | 18.00 | Property Inspection | 10/1/2016 | 46,493.27 | | | | 18.00 | | 161,492.31 | | (29,370.16) | 8,677.81 | 0.00 |
| 5/17/2021 | | | 97.92 | Insurance | 10/1/2016 | 46,493.27 | | | (97.92) | | | 161,492.31 | | (29,468.08) | 8,677.81 | 0.00 |
| 6/1/2021 | 989.79 | | | Monthly Payment Due | 10/1/2016 | 47,483.06 | | | | | | 161,492.31 | | (29,468.08) | 8,677.81 | 0.00 |
| 6/16/2021 | | | 97.92 | Insurance | 10/1/2016 | 47,483.06 | | | (97.92) | | | 161,492.31 | | (29,566.00) | 8,677.81 | 0.00 |
| 6/18/2021 | | | 18.00 | Property Inspection | 10/1/2016 | 47,483.06 | | | | 18.00 | | 161,492.31 | | (29,566.00) | 8,695.81 | 0.00 |
| 7/1/2021 | 989.79 | | | Monthly Payment Due | 10/1/2016 | 48,472.85 | | | | | | 161,492.31 | | (29,566.00) | 8,695.81 | 0.00 |
| 7/15/2021 | | | 97.92 | Insurance | 10/1/2016 | 48,472.85 | | | (97.92) | | | 161,492.31 | | (29,663.92) | 8,695.81 | 0.00 |
| 7/21/2021 | | | 330.00 | FC Attorney Fees | 10/1/2016 | 48,472.85 | | | | 330.00 | | 161,492.31 | | (29,663.92) | 9,025.81 | 0.00 |

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage As Of Date Of Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case Number: | 23-10104 MDC | Principal Balance | $161,492.31 | Principal & Interest | $35,761.80 | Principal & Interest | $470.55 |
| Debtor 1 | Crystal G. Brown | Interest Due | $30,149.78 | Pre-petition Fees Due | $12,372.09 | | |
| Debtor 2 | | MIP Amount | $0.00 | Escrow Def For Funds Advanced | $40,002.03 | Monthly Escrow | $343.26 |
| Last 4 Digits to Identify | 2934 | Fees / Costs Due | $12,372.09 | Projected Escrow Shortage | $1,316.89 | | |
| Creditor | U.S. Bank, N.A., successor trustee to LaSalle Bank National Association, on behalf of the holders of Bear Stearns Asset Backed Securities I Trust 2006-HE10, Asset-Backed Certificates Series 2006-HE10 | Escrow Def for Funds Advanced | $40,002.03 | | | Mortgage Insurance | $0.00 |
| Servicer | SELECT PORTFOLIO SERVICING | Less Total Funds on Hand | $0.00 | Less Total Funds on Hand | $0.00 | | |
| Fixed Accrual, Daily Simple Interest or Other | Fixed | TOTAL DEBT | $244,016.21 | Total Prepetition Arrears | $89,452.81 | Total Monthly Payment | $813.81 |

## PART 5: Loan Payment History From First Date of Default

| | | Account Activity | | | | How Funds Were Applied / Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| mm/dd/yyyy | + | + | + / - | from the list | | calculated | + | + | + / - | + / - | + / - | calculated | calculated | calculated | calculated | calculated |
| Date | Contractual Payment Amount | Funds Received | Amount Incurred | Description | Contractual Due Date | Prin Int & Esc Past Due Balance | Amount to Principal | Amount to Interest | Amount to Escrow | Amount to Fees or Charges | Unapplied funds | Principal Balance | Accrued Interest Balance | Escrow Balance | Fees/Charges Balance | Unapplied Funds Balance |
| 7/21/2021 | | | 3.62 | Foreclosure Costs | 10/1/2016 | 48,472.85 | | | | 3.62 | | 161,492.31 | | (29,663.92) | 9,029.43 | 0.00 |
| 7/23/2021 | | | 18.00 | Property Inspection | 10/1/2016 | 48,472.85 | | | | 18.00 | | 161,492.31 | | (29,663.92) | 9,047.43 | 0.00 |
| 8/1/2021 | 896.87 | | | Monthly Payment Due | 10/1/2016 | 49,369.72 | | | | | | 161,492.31 | | (29,663.92) | 9,047.43 | 0.00 |
| 8/17/2021 | | | 97.92 | Insurance | 10/1/2016 | 49,369.72 | | | (97.92) | | | 161,492.31 | | (29,761.84) | 9,047.43 | 0.00 |
| 8/18/2021 | | | 2,340.56 | Taxes | 10/1/2016 | 49,369.72 | | | (2,340.56) | | | 161,492.31 | | (32,102.40) | 9,047.43 | 0.00 |
| 9/1/2021 | 809.05 | | | Monthly Payment Due | 10/1/2016 | 50,178.77 | | | | | | 161,492.31 | | (32,102.40) | 9,047.43 | 0.00 |
| 9/15/2021 | | | 97.92 | Insurance | 10/1/2016 | 50,178.77 | | | (97.92) | | | 161,492.31 | | (32,200.32) | 9,047.43 | 0.00 |
| 10/1/2021 | 809.05 | | | Monthly Payment Due | 10/1/2016 | 50,987.82 | | | | | | 161,492.31 | | (32,200.32) | 9,047.43 | 0.00 |
| 10/15/2021 | | | 97.92 | Insurance | 10/1/2016 | 50,987.82 | | | (97.92) | | | 161,492.31 | | (32,298.24) | 9,047.43 | 0.00 |
| 10/20/2021 | | 350.00 | | Appraisal | 10/1/2016 | 50,987.82 | | | | (350.00) | | 161,492.31 | | (32,298.24) | 8,697.43 | 0.00 |
| 11/1/2021 | 809.05 | | | Monthly Payment Due | 10/1/2016 | 51,796.87 | | | | | | 161,492.31 | | (32,298.24) | 8,697.43 | 0.00 |
| 11/17/2021 | | | 97.92 | Insurance | 10/1/2016 | 51,796.87 | | | (97.92) | | | 161,492.31 | | (32,396.16) | 8,697.43 | 0.00 |
| 11/18/2021 | | | 330.00 | Foreclosure Costs | 10/1/2016 | 51,796.87 | | | | 330.00 | | 161,492.31 | | (32,396.16) | 9,027.43 | 0.00 |
| 11/18/2021 | | | 3.66 | FC Attorney Fees | 10/1/2016 | 51,796.87 | | | | 3.66 | | 161,492.31 | | (32,396.16) | 9,031.09 | 0.00 |
| 11/19/2021 | | 330.00 | | FC Attorney Fees | 10/1/2016 | 51,796.87 | | | | (330.00) | | 161,492.31 | | (32,396.16) | 8,701.09 | 0.00 |
| 11/19/2021 | | 3.66 | | Foreclosure Costs | 10/1/2016 | 51,796.87 | | | | (3.66) | | 161,492.31 | | (32,396.16) | 8,697.43 | 0.00 |
| 12/1/2021 | 809.05 | | | Monthly Payment Due | 10/1/2016 | 52,605.92 | | | | | | 161,492.31 | | (32,396.16) | 8,697.43 | 0.00 |
| 12/15/2021 | | | 97.92 | Insurance | 10/1/2016 | 52,605.92 | | | (97.92) | | | 161,492.31 | | (32,494.08) | 8,697.43 | 0.00 |
| 1/1/2022 | 809.05 | | | Monthly Payment Due | 10/1/2016 | 53,414.97 | | | | | | 161,492.31 | | (32,494.08) | 8,697.43 | 0.00 |
| 1/18/2022 | | | 97.92 | Insurance | 10/1/2016 | 53,414.97 | | | (97.92) | | | 161,492.31 | | (32,592.00) | 8,697.43 | 0.00 |
| 1/25/2022 | | | 297.70 | Taxes | 10/1/2016 | 53,414.97 | | | (297.70) | | | 161,492.31 | | (32,889.70) | 8,697.43 | 0.00 |
| 2/1/2022 | 809.05 | | | Monthly Payment Due | 10/1/2016 | 54,224.02 | | | | | | 161,492.31 | | (32,889.70) | 8,697.43 | 0.00 |
| 2/5/2022 | | | 232.22 | Taxes | 10/1/2016 | 54,224.02 | | | (232.22) | | | 161,492.31 | | (33,121.92) | 8,697.43 | 0.00 |
| 2/5/2022 | | | 248.58 | Taxes | 10/1/2016 | 54,224.02 | | | (248.58) | | | 161,492.31 | | (33,370.50) | 8,697.43 | 0.00 |
| 2/16/2022 | | | 97.88 | Insurance | 10/1/2016 | 54,224.02 | | | (97.88) | | | 161,492.31 | | (33,468.38) | 8,697.43 | 0.00 |
| 3/1/2022 | 809.05 | | | Monthly Payment Due | 10/1/2016 | 55,033.07 | | | | | | 161,492.31 | | (33,468.38) | 8,697.43 | 0.00 |
| 3/18/2022 | | | 99.84 | Insurance | 10/1/2016 | 55,033.07 | | | (99.84) | | | 161,492.31 | | (33,568.22) | 8,697.43 | 0.00 |
| 4/4/2022 | 809.05 | | | Monthly Payment Due | 10/1/2016 | 55,842.12 | | | | | | 161,492.31 | | (33,568.22) | 8,697.43 | 0.00 |
| 4/15/2022 | | | 99.84 | Insurance | 10/1/2016 | 55,842.12 | | | (99.84) | | | 161,492.31 | | (33,668.06) | 8,697.43 | 0.00 |
| 5/1/2022 | 809.05 | | | Monthly Payment Due | 10/1/2016 | 56,651.17 | | | | | | 161,492.31 | | (33,668.06) | 8,697.43 | 0.00 |
| 5/17/2022 | | | 19.99 | Property Inspection | 10/1/2016 | 56,651.17 | | | | 19.99 | | 161,492.31 | | (33,668.06) | 8,717.42 | 0.00 |
| 5/17/2022 | | | 99.84 | Insurance | 10/1/2016 | 56,651.17 | | | (99.84) | | | 161,492.31 | | (33,767.90) | 8,717.42 | 0.00 |
| 6/1/2022 | 809.05 | | | Monthly Payment Due | 10/1/2016 | 57,460.22 | | | | | | 161,492.31 | | (33,767.90) | 8,717.42 | 0.00 |
| 6/15/2022 | | | 99.84 | Insurance | 10/1/2016 | 57,460.22 | | | (99.84) | | | 161,492.31 | | (33,867.74) | 8,717.42 | 0.00 |
| 6/28/2022 | | | 19.99 | Property Inspection | 10/1/2016 | 57,460.22 | | | | 19.99 | | 161,492.31 | | (33,867.74) | 8,737.41 | 0.00 |
| 7/1/2022 | 809.05 | | | Monthly Payment Due | 10/1/2016 | 58,269.27 | | | | | | 161,492.31 | | (33,867.74) | 8,737.41 | 0.00 |
| 7/15/2022 | | | 99.84 | Insurance | 10/1/2016 | 58,269.27 | | | (99.84) | | | 161,492.31 | | (33,967.58) | 8,737.41 | 0.00 |
| 8/1/2022 | 809.05 | | | Monthly Payment Due | 10/1/2016 | 59,078.32 | | | | | | 161,492.31 | | (33,967.58) | 8,737.41 | 0.00 |
| 8/9/2022 | | | 2,000.57 | Foreclosure Costs | 10/1/2016 | 59,078.32 | | | | 2,000.57 | | 161,492.31 | | (33,967.58) | 10,737.98 | 0.00 |
| 8/17/2022 | | | 99.84 | Insurance | 10/1/2016 | 59,078.32 | | | (99.84) | | | 161,492.31 | | (34,067.42) | 10,737.98 | 0.00 |
| 8/18/2022 | | | 2,374.71 | Taxes | 10/1/2016 | 59,078.32 | | | (2,374.71) | | | 161,492.31 | | (36,442.13) | 10,737.98 | 0.00 |
| 8/25/2022 | | | 250.00 | FC Attorney Fees | 10/1/2016 | 59,078.32 | | | | 250.00 | | 161,492.31 | | (36,442.13) | 10,987.98 | 0.00 |
| 8/29/2022 | | | 19.99 | Property Inspection | 10/1/2016 | 59,078.32 | | | | 19.99 | | 161,492.31 | | (36,442.13) | 11,007.97 | 0.00 |
| 9/1/2022 | | | 350.00 | Appraisal | 10/1/2016 | 59,078.32 | | | | 350.00 | | 161,492.31 | | (36,442.13) | 11,357.97 | 0.00 |
| 9/1/2022 | 809.05 | | | Monthly Payment Due | 10/1/2016 | 59,887.37 | | | | | | 161,492.31 | | (36,442.13) | 11,357.97 | 0.00 |

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage As Of Date Of Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case Number: | 23-10104 MDC | Principal Balance | $161,492.31 | Principal & Interest | $35,761.80 | Principal & Interest | $470.55 |
| Debtor 1 | Crystal G. Brown | Interest Due | $30,149.78 | Pre-petition Fees Due | $12,372.09 | | |
| Debtor 2 | | MIP Amount | $0.00 | Escrow Def For Funds Advanced | $40,002.03 | Monthly Escrow | $343.26 |
| Last 4 Digits to Identify | 2934 | Fees / Costs Due | $12,372.09 | Projected Escrow Shortage | $1,316.89 | | |
| Creditor | U.S. Bank, N.A., successor trustee to LaSalle Bank National Association, on behalf of the holders of Bear Stearns Asset Backed Securities I Trust 2006-HE10, Asset-Backed Certificates Series 2006-HE10 | Escrow Def for Funds Advanced | $40,002.03 | | | Mortgage Insurance | $0.00 |
| Servicer | SELECT PORTFOLIO SERVICING | Less Total Funds on Hand | $0.00 | Less Total Funds on Hand | $0.00 | | |
| Fixed Accrual, Daily Simple Interest or Other | Fixed | TOTAL DEBT | $244,016.21 | Total Prepetition Arrears | $89,452.81 | Total Monthly Payment | $813.81 |

### PART 5: Loan Payment History From First Date of Default

| | | Account Activity | | | | How Funds Were Applied / Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| mm/dd/yyyy | + | + | + / - | from the list | | calculated | + | + | + / - | + / - | + / - | calculated | calculated | calculated | calculated | calculated |
| Date | Contractual Payment Amount | Funds Received | Amount Incurred | Description | Contractual Due Date | Prin Int & Esc Past Due Balance | Amount to Principal | Amount to Interest | Amount to Escrow | Amount to Fees or Charges | Unapplied funds | Principal Balance | Accrued Interest Balance | Escrow Balance | Fees/Charges Balance | Unapplied Funds Balance |
| 9/15/2022 | | | 99.84 | Insurance | 10/1/2016 | 59,887.37 | | | (99.84) | | | 161,492.31 | | (36,541.97) | 11,357.97 | 0.00 |
| 9/26/2022 | | | 3,160.54 | Utilities | 10/1/2016 | 59,887.37 | | | (3,160.54) | | | 161,492.31 | | (39,702.51) | 11,357.97 | 0.00 |
| 10/1/2022 | 1,109.32 | | | Monthly Payment Due | 10/1/2016 | 60,996.69 | | | | | | 161,492.31 | | (39,702.51) | 11,357.97 | 0.00 |
| 10/6/2022 | | | 19.99 | Property Inspection | 10/1/2016 | 60,996.69 | | | | 19.99 | | 161,492.31 | | (39,702.51) | 11,377.96 | 0.00 |
| 10/17/2022 | | | 99.84 | Insurance | 10/1/2016 | 60,996.69 | | | (99.84) | | | 161,492.31 | | (39,802.35) | 11,377.96 | 0.00 |
| 11/1/2022 | 1,109.32 | | | Monthly Payment Due | 10/1/2016 | 62,106.01 | | | | | | 161,492.31 | | (39,802.35) | 11,377.96 | 0.00 |
| 11/8/2022 | | | 19.99 | Property Inspection | 10/1/2016 | 62,106.01 | | | | 19.99 | | 161,492.31 | | (39,802.35) | 11,397.95 | 0.00 |
| 11/16/2022 | | | 99.84 | Insurance | 10/1/2016 | 62,106.01 | | | (99.84) | | | 161,492.31 | | (39,902.19) | 11,397.95 | 0.00 |
| 11/17/2022 | | | 925.00 | FC Attorney Fees | 10/1/2016 | 62,106.01 | | | | 925.00 | | 161,492.31 | | (39,902.19) | 12,322.95 | 0.00 |
| 11/17/2022 | | | 29.15 | Foreclosure Costs | 10/1/2016 | 62,106.01 | | | | 29.15 | | 161,492.31 | | (39,902.19) | 12,352.10 | 0.00 |
| 12/1/2022 | 1,109.32 | | | Monthly Payment Due | 10/1/2016 | 63,215.33 | | | | | | 161,492.31 | | (39,902.19) | 12,352.10 | 0.00 |
| 12/13/2022 | | | 19.99 | Property Inspection | 10/1/2016 | 63,215.33 | | | | 19.99 | | 161,492.31 | | (39,902.19) | 12,372.09 | 0.00 |
| 12/15/2022 | | | 99.84 | Insurance | 10/1/2016 | 63,215.33 | | | (99.84) | | | 161,492.31 | | (40,002.03) | 12,372.09 | 0.00 |
| 1/1/2023 | 1,109.32 | | | Monthly Payment Due | 10/1/2016 | 64,324.65 | | | | | | 161,492.31 | | (40,002.03) | 12,372.09 | 0.00 |
| 1/14/2023 | | | | Current BK Filed | 10/1/2016 | 64,324.65 | | | | | | 161,492.31 | | (40,002.03) | 12,372.09 | 0.00 |
| | | | | | 10/1/2016 | 64,324.65 | | | | | | 161,492.31 | | (40,002.03) | 12,372.09 | 0.00 |
| | | | | | 10/1/2016 | 64,324.65 | | | | | | 161,492.31 | | (40,002.03) | 12,372.09 | 0.00 |

41011352545

The entity that has the right to foreclose is U.S. Bank, N.A., successor
trustee to LaSalle Bank National Association, on behalf of the holders of
Bear Stearns Asset Backed Securities I Trust 2006-HE10, Asset-Backed
Certificates Series 2006-HE10 by virtue of being owner and holder of
note.



Sign up for paperless delivery
at www.spservicing.com

Paperless

January 24, 2023

CRYSTAL G BROWN
967 W MAIN ST
COATESVILLE, PA 19320

**Account Number:** ▮▮▮▮▮▮▮▮
**Property Address:** 967 W MAIN ST
COATESVILLE, PA 19320

**RE: Important notice regarding your Annual Escrow Account Disclosure Statement and your new escrow payment amount**

**This statement is for informational purposes only**

Dear Customer(s):

SPS reviewed your escrow account to determine your new monthly escrow payment. Following are the answers to the most common questions we receive about the escrow account and the details related to the analysis.

1. **What is the amount of my new monthly payment?**
   The table below shows your new monthly payment, including any escrow changes from this new analysis statement.

| Table 1 | Current Payment (As of last analysis) | New Payment (as of 02/01/2023) | Change |
|---|---|---|---|
| **Principal and Interest** | | $470.55 | |
| **Regular Escrow Payment** | $340.42 | $343.26 | $2.84 |
| **Monthly Shortage Payment** | $298.35 | $0.00 | $-298.35 |
| **Total Payment** | | $813.81 | $-295.51 |

Since you are in active bankruptcy, your new payment amount shown above is the post-petition payment amount due.

2. **Why did the escrow portion of my payment change?**
   There are three main reasons why your escrow account payment may change from year to year.

   A. **Regular Escrow Payments** - Changes occur based on differences between the expected property tax or insurance payments for the prior year and the expected property tax or insurance payments for the current year. Table 2 shows those differences and any resulting monthly shortage change, which is explained in section C.

| Table 2 | Prior Year Estimated Disbursements (As of last analysis) | Current Year Estimated Disbursements (as of 02/01/2023) | Change |
|---|---|---|---|
| Tax Disbursements | $2,886.84 | $2,920.99 | $34.15 |
| Hazard Insurance Disbursements | $1,198.08 | $1,198.08 | $0.00 |
| **Total Annual Escrow Disbursements** | $4,084.92 | $4,119.07 | $34.15 |
| **Monthly Escrow Payment** | $340.42 | $343.26 | $2.84 |
| **Monthly Shortage Payment** | $298.35 | $0.00 | $-298.35 |

See reverse side



**B. Escrow Reserve Requirements** – RESPA/Federal law allows lenders to maintain a maximum of two months reserve in your escrow account, commonly referred to as a cushion. However, based on state, investor, or modification requirements your cushion requirement may be less than the Federal requirement. Your account has a monthly reserve requirement of 0 months.

**C. Escrow Balance** – The actual beginning balance on your account in Tables 3 and 4 is $1,217.05. According to the projections shown in Tables 3 and 4, your required beginning balance should be $1,217.05.

Please be advised that this is not an attempt to collect any pre-petition debt, which we have previously claimed on the Proof of Claim.

Your unpaid pre-petition escrow amount is $12,756.07. This amount has been removed from the projected starting balance.

There is no refund or shortage in your escrow account as of this analysis.

Table 3 below shows a detailed history of your escrow account transactions since your last analysis. An asterisk (*) indicates a difference from a previous estimate in either the date or the amount. The letter E beside an amount indicates that the payment or disbursement has not yet occurred but is estimated to occur as shown prior to the effective date of this new analysis. Please note, if the payment or disbursement month shown in table 3 is the same month of this completed analysis and there is an asterisk (*) or the letter E next to the amount, the disbursement or amount may have already occurred by the time you receive this analysis statement and the actual amount may differ from the amount reflected below.

**Table 3**

| Month | Description | Payments Estimate | Payments Actual | Disbursements Estimate | Disbursements Actual | Total Balance |
|---|---|---|---|---|---|---|
| **History** | Beginning Balance | | | | | $-26,946.44 |
| October 2022 | HAZARD INS | 340.42 | 0.00 E | 99.84 | 99.84 | -27,046.28 |
| November 2022 | HAZARD INS | 340.42 | 0.00 E | 99.84 | 99.84 | -27,146.12 |
| December 2022 | HAZARD INS | 340.42 | 0.00 E | 99.84 | 99.84 | -27,245.96 |
| January 2023 | HAZARD INS | 340.42 | 28,562.85 E | 99.84 | 99.84 | 1,217.05 |

Table 4 below shows a detailed projection of future estimated escrow activity of your escrow account transactions since your last analysis as well as a projection of future escrow activity. The double asterisk (**) next to the required balance indicates the lowest projected balance in the analysis. This low balance is used to determine the surplus or shortage in your escrow account at the time of this analysis.

**Table 4**

| Month | Description | Payments Estimate | Disbursements Estimate | Beginning Balance | Required Balance |
|---|---|---|---|---|---|
| | Starting Balance | | | $1,217.05 | $1,217.05 |
| February 2023 | COUNTY TAX | 343.26 | 297.70 | 1,262.61 | 1,262.61 |
| February 2023 | HAZARD INS | 0.00 | 99.84 | 1,162.77 | 1,162.77 |
| March 2023 | CITY TAX | 343.26 | 248.58 | 1,257.45 | 1,257.45 |
| March 2023 | HAZARD INS | 0.00 | 99.84 | 1,157.61 | 1,157.61 |
| April 2023 | HAZARD INS | 343.26 | 99.84 | 1,401.03 | 1,401.03 |
| May 2023 | HAZARD INS | 343.26 | 99.84 | 1,644.45 | 1,644.45 |
| June 2023 | HAZARD INS | 343.26 | 99.84 | 1,887.87 | 1,887.87 |
| July 2023 | HAZARD INS | 343.26 | 99.84 | 2,131.29 | 2,131.29 |
| August 2023 | SCHOOL TAX | 343.26 | 2,374.71 | 99.84 | 99.84 |
| August 2023 | HAZARD INS | 0.00 | 99.84 | 0.00 | 0.00** |
| September 2023 | HAZARD INS | 343.26 | 99.84 | 243.42 | 243.42 |
| October 2023 | HAZARD INS | 343.26 | 99.84 | 486.84 | 486.84 |

| | | | | | |
|---|---|---|---|---|---|
| November 2023 | HAZARD INS | 343.26 | 99.84 | 730.26 | 730.26 |
| December 2023 | HAZARD INS | 343.26 | 99.84 | 973.68 | 973.68 |
| January 2024 | HAZARD INS | 343.26 | 99.84 | 1,217.10 | 1,217.10 |

If you wish to send a written inquiry about your account or dispute any of the information on this statement, please send it to the address listed below for Notice of Error/Information Request. If you send your Notice of Error/Information Request to any other address, it may not be processed in accordance with the guidelines established by the Real Estate Settlement Procedures Act (RESPA).

**Important Mailing Addresses:**

| **General Correspondence** | **Payment Remittance** | **Notice of Error/Information Request** |
|---|---|---|
| PO Box 65250 Salt Lake City, UT 84165-0250 | PO Box 65450 Salt Lake City, UT 84165-0450 | PO Box 65277 Salt Lake City, UT 84165-0277 |

If your account is set up on a monthly automatic withdrawal payment option, your monthly payment withdrawal amount will be updated according to the adjusted payment above once the escrow analysis becomes effective.  If you have any questions or concerns, please contact our Customer Service Department. Our toll-free number is 800-258-8602 and representatives are available Monday through Friday between the hours of 8 a.m. and 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time.  You may also visit our website at www.spservicing.com.

Sincerely,

Select Portfolio Servicing, Inc.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición  para contestar cualquier pregunta. Llamenos al numero 800-831-0118 y seleccione/marque la opción 2.**

**This information is intended for informational purposes only and is not considered an attempt to collect a debt.**

See reverse side

See reverse side

# NOTE

October 26, 2006
[Date]                                                      [City]                                   [State]
967 WEST MAIN STREET, COATESVILLE, PA  19320

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $104,000.00          (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is Encore Credit Corp, A California Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of          8.900 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st      day of each month beginning on  December 01, 2006          .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below
that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to
interest before Principal. If, on November 1, 2036          , I still owe amounts under this Note, I will pay those
amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 1833 Alton Parkway, Irvine, CA 92606

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $829.34          .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid principal
is known as a "Full Prepayment." A prepayment of only part of the unpaid principal is known as a "Partial Prepayment."

Except as provided below, I may make a Full or Partial Prepayment at any time. If I make a Partial Prepayment equal to
one or more of my monthly payments, my due date may be advanced no more than one month. If I make any other Partial
Prepayment, I must still make each later payment as it becomes due and in the same amount. I may make a Full Prepayment at
any time. However, if within the first      30 months after the execution of this mortgage, I make any prepayment(s) within any
12-month period the total amount of which exceeds TWENTY
percent (          20 %) of the original Principal amount of this loan, I will pay a prepayment charge in an amount
equal to the payment of SIX                                              ( 6                    ) months'
advance interest on the amount by which the total of my prepayment(s) within that 12-month period exceeds
TWENTY                                     percent (          20 %) of the original Principal
amount of the loan.

**PENNSYLVANIA FIXED RATE NOTE** - Single Family - With Prepayment Penalty

Page 1 of 3

4/03



Initials: _____

Exhibit - POC    Page 19 of 49

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a Partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  fifteen     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be                5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. APPLICABLE LAW

This Note shall be governed by the laws of the State of Pennsylvania. If a law, which applies to this loan and sets maximum loan charges is finally interpreted so that the interest and other charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such interest or other charge shall be reduced by the amount necessary to reduce the interest or other charge to the permitted limit; and (b) any sums already collected from me which exceed permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a Partial Prepayment, but in no event will a prepayment charge be assessed if the Note Holder chooses to reduce my Principal balance by applying such excess amounts.

 

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)                    _____ (Seal)
CRYSTAL G. BROWN                              -Borrower                                                                          -Borrower


_____ (Seal)                    _____ (Seal)
                                              -Borrower                                                                          -Borrower


_____ (Seal)                    _____ (Seal)
                                              -Borrower                                                                          -Borrower


_____ (Seal)                    _____ (Seal)
                                              -Borrower                                                                          -Borrower


*[Sign Original Only]*



PAY TO THE **ORDER OF**

WITHOUT RECOURSE
ENCORE CREDIT CORP.,
A CALIFORNIA CORPORATION

JESSIE JONES
SR. SHIPPING ANALYST

**LOAN MODIFICATION AGREEMENT**

This Loan Modification Agreement ("Agreement") is effective June 1, 2016, between CRYSTAL BROWN, ("Borrower") and Select Portfolio Servicing, Inc., acting on behalf of the owner of the Note, ("Lender"). If Borrower's representations and covenants in Section 1 continue to be true in all material respects, then this Agreement will amend and supplement, as set forth in Section 2, the Note made by the Borrower, dated October 26, 2006, in the original principal sum of $104,000.00 ("Note"). The Mortgage or Deed of Trust ("Security Instrument"), which was entered into as security for the Note, encumbers the real and personal property described in the Security Instrument (defined in the Security Instrument as the "Property"), known as:

967 W MAIN ST
COATESVILLE, PA 19320

The Note and Security Instrument are collectively referred to in this Agreement as the "Loan Documents."

1. Borrower Representations and Covenants. Borrower certifies, represents, covenants, and agrees as follows:

    a. Borrower is experiencing a financial hardship, and as a result, (i) is in default under the Note or default is imminent, and (ii) Borrower does not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future.

    b. There has been no impermissible change in the ownership of the Property since Borrower signed the Note.

    c. If requested by Lender, Borrower has provided documentation for all income that they receive.

    d. All documents and information Borrower has provided to Lender in connection with this Agreement, including the documents and information regarding eligibility for this Agreement, are complete, true and correct.

    e. Borrower has made or will make all payments required under a trial modification plan or loan workout plan, if applicable.

    f. The property is neither in a state of disrepair, nor condemned.

    g. Borrower is not a party to any litigation involving the Loan Documents, except to the extent the borrower may be a defendant in a foreclosure action.

2. The Modification. If Borrower's representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on June 1, 2016 (the "Modification Effective Date") and all late charges that remain unpaid will be waived. Borrower understands that if they fail to make any payments as a precondition to this modification under a workout plan or trial modification plan, this modification will not take effect. The first modified payment will be due on July 1, 2016.

    a. The Maturity Date will be: November 1, 2036.

    b. The modified principal balance of the Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to the account associated with the Note. The new principal balance of the Note will be $161,684.95 (the "New Principal Balance"). Borrower understands that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. Borrower also understands that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

    c. $64,100.00 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and will be treated as a non-interest bearing principal forbearance. Borrower will not pay interest or make monthly payments on the Deferred Principal Balance. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $97,584.95. Interest at the rate of 5.000% will begin to accrue on the Interest Bearing Principal Balance as of June 1, 2016 and the first new monthly payment on the Interest Bearing Principal Balance will be due on July 1, 2016. The payment schedule for the modified Lien Documents is as follows:

| Months | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|--------|---------------|---------------------------|-----------------------------------------------|------------------------------------------|------------------------|-------------------|----------------------------|
| 1-245 | 5.000% | N/A | $470.55 | $316.12, may adjust periodically | $786.67, may adjust periodically | July 1, 2016 | 245 |

**A final balloon payment on the Interest Bearing Principal Balance of $70,426.40 is due on the Maturity Date.**

The Deferred Principal Balance of $64,100.00 will be due as a balloon payment on the earlier of, payoff of the Interest Bearing Principal Balance, transfer of the property or on the Modified Maturity Date. The above terms in this Section 2.c shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore the total monthly payment may change accordingly.

BALLOON NOTICE. THE AMORTIZATION TERM OF THE LOAN IS 480 MONTHS. AS A RESULT, BORROWER WILL BE REQUIRED TO REPAY THE ENTIRE PRINCIPAL BALANCE AND ANY ACCRUED INTEREST THEN OWING ON THE MATURITY DATE. LENDER HAS NO OBLIGATION TO REFINANCE THIS LOAN, INCLUDING THE DEFERRED PRINCIPAL BALANCE, AT THE END OF TERM. THEREFORE, BORROWER MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS THEY OWN, OR BORROWER MAY HAVE TO FIND ANOTHER LENDER WILLING TO REFINANCE THE LOAN. ASSUMING ANOTHER LENDER REFINANCES THIS LOAN AT MATURITY, BORROWER MAY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THE NOTE. BORROWER MAY ALSO HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

d. Borrower has agreed to establish an escrow account to pay for property taxes and homeowner's insurance and pay a monthly escrow payment in the initial amount of $316.12. Borrower's total monthly payment of principal, interest and escrow will therefore be equal to $786.67. Borrower acknowledges that the payments attributable to insurance and taxes are determined by the state taxing authorities and insurance companies and therefore, are subject to change from time to time. Borrower will be notified of any changes.

3. Other Agreements. Borrower and Lender also agree to the following:

   a. This Agreement shall supersede any modification, forbearance, trial period plan, or other workout plan that Borrower previously entered into with Lender.

   b. The Security Instrument and Note, as modified by this Agreement, are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

   c. All terms of the Security Instrument and Note, except as expressly modified by this Agreement, or by the U.S. Bankruptcy Code, remain in full force and effect. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Note and Security Instrument.

   d. Borrower will be bound by and comply with all covenants, agreements, and requirements of the Note as modified by the Agreement and the Security Instrument, including all requirements to make payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Note and Security Instrument.

   e. If any document is lost, misplaced, misstated or inaccurately reflects the true and correct terms and conditions of the Loan Documents as amended by this Agreement, within ten (10) days after receipt of the Lender's request, Borrower will execute, acknowledge, initial, and deliver to the Lender any documentation the Lender deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s). If Borrower fails to do so, Borrower will be liable for any and all loss or damage which the Lender reasonably sustains as a result of Borrower's failure. At Lender's option, this Agreement will be void and of no legal effect upon notice of such loss, misplacement, misstatement, or inaccuracy. If Borrower elects not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and Borrower will not be eligible for a modification.

f.  The mortgage insurance premiums due from Borrower, if applicable, may increase as a result of the capitalization, which will result in a higher total monthly payment. Furthermore, the date on which Borrower may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

g.  As of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, Borrower agrees as follows: If all or any part of the Property or any interest in it is sold or transferred without the Lender's prior written consent, the Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, the Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If the Lender exercises this option, the lender shall give borrower notice of acceleration. The notice shall provide a period of not less than thirty (30) days – depending on state law and other requirements – from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by the Mortgage without further notice or demand on the Borrower.

h.  As of the Modification Effective Date, a buyer of the Property will not be permitted, under any circumstance, to assume the Loan. In any event, this Agreement may not be assigned to, or assumed by, a buyer of the Property.

i.  All payment amounts specified in this Agreement assume that payments will be made as scheduled.

j.  If Borrower is in bankruptcy upon execution of this document, Borrower will cooperate fully with Lender in obtaining any required bankruptcy court and trustee approvals in accordance with local court rules and procedures. Borrower understands that if such approvals are not received, then the terms of this Agreement will be null and void. If this Agreement becomes null and void, the terms of the original Loan Documents shall continue in full force and effect, and such terms shall not be modified by this Agreement.

k.  If Borrower(s) received a discharge in a Chapter 7 bankruptcy subsequent to the execution of the Loan Documents, Lender agrees that such Borrower(s) will not have personal liability on the debt pursuant to this Agreement.

l.  In agreeing to the changes to the original Loan Documents as reflected in this Agreement, Lender has relied upon the truth and accuracy of all of the representations made by Borrower(s), both in this Agreement and in any documentation provided by or on behalf of Borrower(s) in connection with this Agreement. If Lender subsequently determines that such representations or documentation were not truthful or accurate, Lender may, at its option, rescind this Agreement and reinstate the original terms of the Loan Documents as if this Agreement never occurred.

The Borrower(s) and Lender have signed this Agreement as of the Effective Date

Borrower Signature: _Crystal A Brown_    Date: _July 2, 2016_

Borrower Signature: _____    Date: _____

Select Portfolio Servicing, Inc. (On behalf of Lender): _____    Date: _____

DIGIMAIL    JUL 0 7 2016

Prepared By:

Encore Credit Corp
1833 Alton Parkway
Irvine, CA 92606

Return To: Ace Abstract



RECORDER OF DEEDS

Encore Credit Corp
1833 Alton Parkway
Irvine, CA 92606

Parcel Number:

Premises: 967 WEST MAIN STREET
COATESVILLE

——————[Space Above This Line For Recording Data]——————

# MORTGAGE

MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated October 26, 2006 ,
together with all Riders to this document.

**(B) "Borrower"** is CRYSTAL G. BROWN

Borrower is the mortgagor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee
under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint MI 48501-2026, tel. (888) 679-MERS.

373782

PENNSYLVANIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3039 1/01

VMP®-6A(PA) (0502)

Page 1 of 16    Initials:

VMP Mortgage Solutions, Inc. (800)521-7291

This Document Recorded
12/18/2006
10:54AM
Doc Code: MTG Chester County, Recorder of Deeds Office

Doc Id: 10713524
Receipt #
Rec Fee: 106.50

ACE ABSTRACT

10713524
Page 1 of 19
B-7035 P-1481

**(D) "Lender"** is Encore Credit Corp. A California Corporation

Lender is a Corporation
organized and existing under the laws of California
Lender's address is 1833 Alton Parkway
Irvine, CA 92606
**(E) "Note"** means the promissory note signed by Borrower and dated October 26, 2006
The Note states that Borrower owes Lender one hundred four thousand and 00/100

Dollars

(U.S. $104,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than November 1, 2036
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| | | Prepayment Rider |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: _____

**VMP -6A(PA)** (0206)                Page 2 of 16                **Form 3039   1/01**

10713524
Page 2 of 19
B-7035 P-1481

ACE ABSTRACT                    12/18/2006 10:54A

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the County      [Type of Recording Jurisdiction]
of CHESTER                                                                                          [Name of Recording Jurisdiction]:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS SCHEDULE "A"

which currently has the address of 967 WEST MAIN STREET

[Street]

COATESVILLE                                          [City], Pennsylvania 19320          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Initials:

-6A(PA) (0206)                          Page 3 of 16                                      Form 3039  1/01

10713524
Page 3 of 19
ACE ABSTRACT                    12/18/2006 10:54A      B-7035 P-1481

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

Initials: _____

-6A(PA) (0206)                    Page 4 of 16                    Form 3039   1/01



ACE ABSTRACT            12/18/2006 10 54A

10713524
Page 4 of 15
B-7035 P-1481

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest



-6A(PA) (0206)                    Page 5 of 16                    Initials ____                    Form 3039   1/01

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

 -6A(PA) (0206)                        Page 6 of 16                        Initials:                     Form 3039  1/01

10713524
Page 6 of 19
B-7035 P-1481

ACE ABSTRACT                                              12/18/2006 10:54A

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

 -6A(PA) (0206)                         Page 7 of 16                 Initials _____        Form 3039   1/01

10713524
Page 7 of 19
 B-7035 P-1481

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

 -6A(PA) (0206)          Page 8 of 16          Initials:           **Form 3039   1/01**

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

 -6A(PA) (0206)                    Page 9 of 16                    Initials                     Form 3039  1/01

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be

 



10713524
Page  10 of 19
B-7035 P-1481

ACE ABSTRACT                                    12/19/2006 10 54A

dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to

 -6A(PA) (0206)    Page 11 of 16    Initials _____    Form 3039   1/01



have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

   **16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

   As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

   **17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

   **18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

   If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

   **19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or


10713524
Page 12 of 19
B-7035 P-1481

ACE ABSTRACT                         12/18/2006 10:52A

agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

  

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

 -6A(PA) (0206)               Page 14 of 16                    Initials                **Form 3039  1/01**

10713524
Page 14 of 19
B-7035 P-1481

ACE ABSTRACT                                    12/18/2006 10:54A

# Exhibit A

**ALL THAT CERTAIN** lot of land designated as Lots Nos. 59 and 60 on a Plan of Lots called "Lincoln Heights" on the Lincoln Highway in the Township of Valley, County of Chester and State of Pennsylvania, developed by Harry A. Nichols, and more particularly bounded and described as follows:

BEGINNING at a state on the South side of Main Street, a corner of Lot No. 58, now or late of Walter D. Carlin and Mary Newlin Carlin; thence by the said South line of Main Street North 70 degrees 7 minutes East, 106 feet to a stake, a corner of Lot No. 61, now or late of Edward H. Young; thence by said Lot No. 61 South 19 degrees 53 minutes East, 150 feet to a stake in the North line of Mifflin Street; thence by the said North line of Mifflin Street South 70 degrees 7 minutes West, 100 feet to a stake, a corner of said Lot No. 58; thence by said Lot No. 58 North 19 degrees 53 minutes West, 150 feet to the place of beginning.

CONTAINING 15,000 square feet of land, be the same more or less.

BEING Known as 967 Main Street.

BEING Tax Parcel Number

10713524
Page 15 of 19
B-7035 P-1481

ACE ABSTRACT        12/18/2006 10 54A

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                           CRYSTAL G. BROWN                      -Borrower

                                           _____ (Seal)
_____                                               -Borrower

_____ (Seal)     _____ (Seal)
                     -Borrower                                                   -Borrower

_____ (Seal)     _____ (Seal)
                     -Borrower                                                   -Borrower

_____ (Seal)     _____ (Seal)
                     -Borrower                                                   -Borrower

10713524
Page 16 of 16
B-7035 P-1481

ACE ABSTRACT

**COMMONWEALTH OF PENNSYLVANIA,** *Philadelphia* County ss:

On this, the *26th* day of *October, 2006* , before me, the
undersigned officer, personally appeared **CRYSTAL G. BROWN**

known to me (or
satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged that he/she/they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires:

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
NATALIA MAMONTOVA, Notary Public
City of Philadelphia, Phila. County
My Commission Expires December 21, 2008

*Nat. Mamontova*

Title of Officer

(Notary's Stamp and Embosser)

## Certificate of Residence of Mortgagee

The undersigned hereby certifies that : (i) he/she is the Mortgagee or the duly authorized attorney or
agent of the Mortgagee named in the within instrument; and (ii) Mortgagee's precise residence is:
**1833 Alton Parkway, Irvine, CA 92606**

Witness my hand this *26th* day of *October, 2006*

*Nat. Mamontova*

Signature of Mortgagee or Mortgagee's Duly Authorized Attorney or Agent

*Natalia Mamontova*

Type or Print Name of Mortgagee or Mortgagee's Duly Authorized Attorney or Agent

**D06C16PA.UFF**                    **Page 16 of 16**                    **Form 3039 1/01**

10713524
Page 17 of 19
B-7035 P-1481

## PREPAYMENT RIDER
### (Multi-State)

**Loan Number:**

**Date:**   October 26, 2006

**Borrower(s):** CRYSTAL G. BROWN

This Prepayment Rider is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of trust or Security Deed of the same date (the"Security Instrument") made by the undersigned (the "Borrower") as trustor or mortgagor in favor of Encore Credit Corp. A California Corporation (the "Lender").

To the extent that the provisions of the Prepayment Rider are inconsistent with the provisions of the Security Instrument, the provisions of the Rider shall prevail over and shall supersede any such inconsistent provisions of the Security Instrument.

**Prepayment Covenants.** Notwithstanding anything to the contrary set forth in the Security Instrument, Borrower and Lender covenant, and agree, as follows:

Subject to the Prepayment penalty provided below, I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". A "Full Prepayment" is the prepayment of the entire unpaid Principal due under the Note. A payment of only part of the unpaid Principal is known as a "Partial Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

**If within Thirty (30) months from the date of execution of the Security Instrument I make a full or partial Prepayment, and the total of such Prepayments in any 12-month period exceeds TWENTY PERCENT (20%) of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to SIX (6) months' advance interest on the amount by which the total on my Prepayments within that 12-month period exceeds TWENTY PERCENT (20%) of the original Principal amount of the loan.**

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.

If my Note provides for changes in the interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

The Note Holder's failure to collect a Prepayment charge at the time a Prepayment is received shall not be deemed a waiver of such charge. Any Prepayment charge not collected at the time the Prepayment is received shall be payable on demand.

Rev Dt: 05/05                                   Page: 1 of 2

# PREPAYMENT RIDER
## (Multi-State)

All other provisions of the Security Instrument are unchanged and remain in full force and effect.

**NOTICE TO BORROWER**
   **Do not sign this Addendum before you read it. This Addendum provides for the payment of a Prepayment penalty if you wish to repay the loan prior to the date provided for repayment in the Note.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED:

_Crystal G. Brown_   10-26-06

| | |
|---|---|
| **CRYSTAL G. BROWN**   Date | Date |
| Date | Date |
| Date | Date |
| Date | Date |

10713524
Page 19 of 19
B-7035 P-1481

ACE ABSTRACT          12/19/2006 10:54A

Rev Dt: 05/05          Page: 2 of 2

Doc Id: 10937420
Receipt #:
Rec Fee:
This Document Recorded
08/23/2009    State RTT: 0.00
10:17AM    Local RTT: 0.00
Doc Code: ASM Chester County, Recorder of Deeds Office
Recorded Electronically by Simplifile

Prepared By:
Law Offices of Gregory Javardian
1310 Industrial Blvd., Ste. 101
Southampton, PA 18966

Return to:
Law Offices of Gregory Javardian
1310 Industrial Blvd., Ste. 101
Southampton, PA 18966

UPI:
MIN:

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the receipt and sufficiency of which is hereby acknowledged,
the undersigned:

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), AS NOMINEE FOR
ENCORE CREDIT CORP. A CALIFORNIA CORPORATION, ITS SUCCESSORS AND/OR
ASSIGNS**

hereby sells, transfers, assigns, coveys and sets over to:

**BANK OF AMERICA, NATIONAL ASSOCIATION, AS S/B/M TO LASALLE BANK
NATIONAL ASSOCIATION, AS TRUSTEE FOR CERTIFICATEHOLDERS OF BEAR
STEARNS ASSET BACKED SECURITIES I LLC, ASSET-BACKED CERTIFICATES,
SERIES 2006-HE10**

its successors, representatives and assigns, all its rights, title and interest in that certain Mortgage
executed by Crystal G. Brown dated October 26, 2006 and recorded December 18, 2006 at
Document ID No. 10713524 in the Office of Recorder of Deeds of Chester County, Pennsylvania.

Property:            967 West Main Street, Coatesville, PA 19320
Mortgage Amount:     $104,000.00

TOGETHER WITH THE REAL PROPERTY therein described and the indebtedness thereby
secured, having this date sold to the therein named assignee, the Note or Notes secured by said
Mortgage.



Ryan Costello
RECORDER OF DEEDS

10937420
Page 2 of 3
SOUTHAMPTON ABSTRACT    08/29/2009 10:17A  B-7702 P-231

TO EXERCISE the said rights, powers and privileges set forth therein in as full as a manner as the undersigned is authorized to exercise the same.

IN WITNESS WHEREOF, the undersigned has caused this instrument to be signed in its behalf by its duly authorized officers and caused its Corporate seal to be affixed this _____ 17 _____ day of_____ June _____, 2009.

MORTGAGE    ELECTRONIC    REGISTRATION SYSTEMS, INC. (MERS), AS NOMINEE FOR ENCORE CREDIT CORP. A CALIFORNIA CORPORATION, ITS SUCCESSORS AND/OR ASSIGNS

Greg Allen
Vice President    VP

STATE OF  MN

COUNTY OF  Dakota

BEFORE ME, the undersigned authority, on this day personally appeared _____ Greg Allen _____ known to me to be the person and officer whose name is subscribed to the foregoing instrument and acknowledged to me that the same was the act of the said MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), AS NOMINEE FOR ENCORE CREDIT CORP. A CALIFORNIA CORPORATION, ITS SUCCESSORS AND/OR ASSIGNS, a Corporation and that he executed the same as the act of such corporation for the purposes and consideration there in expressed, and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the _____ 17 _____ day of _____ June _____, 2009.

My Commission Expires:

NOTARY PUBLIC

Record and Return to:
I hereby certify that the address of the assignee is:
800 State Highway 121 Bypass
Lewisville, TX 75067-4180

JAMES A. CHUA
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2013

10937420
Page 3 of 3
SOUTHAMPTON ABSTRACT    06/23/2008 10:17A  B-7702 P-231

## Exhibit A

**ALL THAT CERTAIN** lot of land designated as Lots Nos. 59 and 60 on a Plan of Lots called "Lincoln Heights" on the Lincoln Highway in the Township of Valley, County of Chester and State of Pennsylvania, developed by Harry A. Nichols, and more particularly bounded and described as follows:

BEGINNING at a state on the South side of Main Street, a corner of Lot No. 58, now or late of Walter D. Carlin and Mary Newlin Carlin; thence by the said South line of Main Street North 70 degrees 7 minutes East, 106 feet to a stake, a corner of Lot No. 61, now or late of Edward H. Young; thence by said Lot No. 61 South 19 degrees 53 minutes East, 150 feet to a stake in the North line of Mifflin Street; thence by the said North line of Mifflin Street South 70 degrees 7 minutes West, 100 feet to a stake, a corner of said Lot No. 58; thence by said Lot No. 58 North 19 degrees 53 minutes West, 150 feet to the place of beginning.

CONTAINING 15,000 square feet of land, be the same more or less.

BEING Known as 967 Main Street.

BEING Tax Parcel Number ████████

10713524
Page 18 of 19
ACE ABSTRACT        13/18/2008 10 34P    B-7035 P-1481

163702 EB-9838 P 790 ASM
10/30/2018 12:55:04 PM
Rec Fees: $80.75    State: $0.00
Rick Loughery Recorder of Deeds, Chester County, PA



**RECORDER OF DEEDS**

**Prepared by:**
Bill Koch
Select Portfolio Servicing, Inc.
3217 S. DECKER LAKE DRIVE
SALT LAKE CITY, UT, 84119
(800) 258-8602
When recorded return to :
Richmond Monroe Group
82 Jim Linegar LN
Branson West, MO, 65737
SPS #
UPI #:

✔

## CORPORATE ASSIGNMENT OF MORTGAGE

TS Ref #:
PA/CHESTER

Assignment Prepared on: September 14, 2018

**ASSIGNOR: BANK OF AMERICA, NATIONAL ASSOCIATION, AS S/B/M TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR CERTIFICATEHOLDERS OF BEAR STEARNS ASSET BACKED SECURITIES I LLC, ASSET-BACKED CERTIFICATES, SERIES 2006-HE10 BY SELECT PORTFOLIO SERVICING, INC., ITS ATTORNEY IN FACT, at C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119**

**ASSIGNEE: U.S. BANK, N.A., SUCCESSOR TRUSTEE TO LASALLE BANK NATIONAL ASSOCIATION, ON BEHALF OF THE HOLDERS OF BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2006-HE10, ASSET-BACKED CERTIFICATES SERIES 2006-HE10, at C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119**

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee interest under that certain Mortgage Dated: 10/26/2006, in the amount of $104,000.00, executed by CRYSTAL G. BROWN to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR ENCORE CREDIT CORP. A CALIFORNIA CORPORATION, ITS SUCCESSORS AND ASSIGNS and Recorded: 12/18/2006, Instrument #: 10713524, Book: 7035, Page: 1481 in CHESTER County, State of Pennsylvania.

I do certify that the precise address of (grantee/assignee/mortgagee/etc) is C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

Attested By: ~~Jensonn Whicker~~

The property is located in the Township of VALLEY.
Property Address: 967 WEST MAIN STREET , COATESVILLE, PA, 19320

Document References:
- Assignment Dated: 6/17/2009 from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR ENCORE CREDIT CORP. A CALIFORNIA CORPORATION, ITS SUCCESSORS AND/OR ASSIGNS to BANK OF AMERICA, NATIONAL ASSOCIATION, AS S/B/M TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR CERTIFICATEHOLDERS OF BEAR STEARNS ASSET BACKED SECURITIES I LLC, ASSET-BACKED CERTIFICATES, SERIES 2006-HE10 Recorded: 6/23/2009, Instrument #: 10937420, Book: 7702, Page: 231

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

Page: 2 of 2 / TS Ref #: [REDACTED]

BANK OF AMERICA, NATIONAL ASSOCIATION, AS S/B/M TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR CERTIFICATEHOLDERS OF BEAR STEARNS ASSET BACKED SECURITIES I LLC, ASSET-BACKED CERTIFICATES, SERIES 2006-HE10 BY SELECT PORTFOLIO SERVICING, INC., ITS ATTORNEY IN FACT

On: **SEP 2 4 2018**

By: _Jennum Whitaker_
Name: **JOLENE M. WHITAKER**
Title: **DOC CONTROL OFFICER**

State of UTAH
County of SALT LAKE

Vicky Padilla

On **SEP 2 4 2018** , before me, _____ , a Notary Public in and for SALT LAKE in the State of UTAH, personally appeared _Jolene M Whitaker_
Document Control Officer ____ , BANK OF AMERICA, NATIONAL ASSOCIATION, AS S/B/M TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR CERTIFICATEHOLDERS OF BEAR STEARNS ASSET BACKED SECURITIES I LLC, ASSET-BACKED CERTIFICATES, SERIES 2006-HE10 BY SELECT PORTFOLIO SERVICING, INC., ITS ATTORNEY IN FACT, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Vicky Padilla_
Vicky Padilla

Notary Expires: **FEB 2 7 2021** / #: 693750

**PA/CHESTER**

VICKY PADILLA
Notary Public State of Utah
Comm. Exp.: Feb. 27, 2021
Comm. Number: 693750